August 26, 2021

Genesee County Road Commission
Board Chairman, Cloyce Dickerson
211 W. Oakley Street
Flint, MI 48503

Dear Commissioner Cloyce Dickerson:

Pursuant to the Genesee County Road Commission (GCRC) Complaint Procedure Policy, please consider this letter as a formal written complaint of retaliation, continued race discrimination, harassment, differential treatment, and hostile work environment against my supervisor, Managing Director, Fred Peivandi. The aforementioned actions violate the GCRC Anti-Harassment and Unlawful Retaliation in the Workplace Policy and violate the Title VII of the Civil Rights Acts of 1964 and the Michigan Elliott-Larsen Civil Rights Act of 1976.

### I. Request for Investigation

I request an unbiased investigation of the situation. As you know, I am employed as the GCRC Human Resources Director and have held this position since October 2016. I have served with passion and dedication. I perform my duties to the best of my ability and I have pride in my work. During my five (5) year tenure I have never received discipline prior to Thursday, August 19, 2021, when I received an unmerited two (2) week suspension from GCRC Managing Director, Fred Peivandi.

### II. Previous Discrimination Complaints and Protected Activity

The unlawful acts as mentioned above began when Mr. Peivandi became the GCRC Managing Director and my direct report in July 2018. Mr. Peivandi' unlawful acts continue to escalate more intensely, particularly after I filed an EEOC complaint in February, 2019 against Mr. Peivandi. I chose not to move forward with my claims in an effort to seek a resolution that was not adverse to GCRC.

In 2020, I participated in a discrimination proceeding regarding an employee of GCRC and gave deposition testimony that Mr. Peivandi believed was not favorable to him. Mr. Peivandi harassed me regarding my testimony. A member of my staff (Cherry Grant) witnessed this conversation.

In January 2021, I filed a complaint with the GCRC Board against Mr. Peivandi for Race Discrimination, Harassment, Differential Treatment and Retaliation. In February of 2021, I filed an EEOC complaint alleging the same. There have been numerous occasions where I expressed my concern that Mr. Peivandi has treated

employees of different races and genders differently, including myself. I have also reported these violations and unlawful acts to the GCRC Board and its labor attorney.

### III.   Continuing Retaliation (Unmerited Disciplinary Action)

On Thursday, August 19, 2021, I was invited via email to a meeting to discuss HR issues. **See enclosed attached email #1 scheduled meeting notice.**

Upon my arrival to the meeting, I was surprised when Mr. Peivandi presented me with a Disciplinary Action Notice and informed me that I was being suspended for two (2) weeks for insubordination. **See enclosed attachment, email #2 August 19, 2021 Disciplinary Action Notice for full details.**

During this brief meeting, Mr. Peivandi neglected to follow GCRC disciplinary protocol. He did not discuss specifically the nature of my alleged misconduct or performance deficiencies directly with me. I was not given a reasonable opportunity to respond to the allegations before being disciplined. Progressive disciplinary steps were not used. My colleague Randy Dellaposta' was present in the meeting and did not have a specific reason to be there. I do not report to him and he is not in my chain of command.

In light of the way this was handled, I do not believe our labor attorney was involved as a check and balance. To my knowledge Mr. Pervandi failed to inform the Board on his decision to impose a two (2) week suspension on me.

### IV.   Disciplinary Action Notice Contained False Accusations.

1. **Accusation #1**

In the first page, third paragraph, of the enclosed Disciplinary Action Notice, Mr. Peivandi gives a false description of his non-communicated intention relative to his email response to the Monday, August 16, 2021 email I sent him. **See attachment #3 recommendation email to Mr. Peivandi.**

Mr. Peivandi alleges in the Disciplinary Action Notice concerning my recommendation that in his Monday, August 16, 2021, 3:42 PM response to my recommendation the following:

> *"I intended this email to communicate to you my reasoned and ultimate directive concerning the GCRC's COVID-19 response policy, to remain effective until new facts, legal requirements, or persuasive guidance necessitated changing course."*

However, Mr. Peivandi' Monday August 16, 2021, 3:42PM email did not convey his intention as expressed in the imposed Disciplinary Action Notice. Instead his email said the following:

> *"Donna, I do not wish to mandate that GCRC staff and visitors wear masks, but I do want staff to be aware of the risk levels in Genesee County so that they can make their own personal protection decision. If at a later time MIOSHA issues a mandate, GCRC will need to comply with the guidance of requiring all staff and visitors to wear masks. It is a good time to remind staff about social distancing, hand washing, and the availability of masks and hand sanitizer."* **Please see the enclosed attachment # 3 at bottom of page for Mr. Peivandi email response.**

I interpreted Mr. Peivandi's email response as directing me to (1) Share his decision on MIOSHA' recommendation and CDC guidelines with GCRC employees that he was not going to mandate the wearing of face masks. (2) Inform the GCRC employees about Genesee County being ranked as a Substantial Transmission Risk County, so GCRC employees could make their own personal protection decision. (3) Remind the employees on the importance of social distancing, hand washing and the availability of GCRC masks and hand sanitizer.

2. **Accusation #2**

Mr. Peivandi in the last sentence in the last paragraph on page one (1) of the Disciplinary Action Notice states:

> *"I disagree with your position concerning the necessity of elevating this conversation to the Board before the public, as I had prior communicated to you my "final say" with respect to this extremely serious, highly contentious, and politically-charged health and safety issue."*

Mr. Peivandi never responded to my August 16, 2021 email that I sent to him at 5:26 PM. In the above mentioned email, I (1). Reiterated my previous recommendation. (2) Shared with Mr. Peivandi that Genesee County Board of Commissioner and Genesee County Health Department Board Chair, Bryant Nolden, confirmed that under the advisement of Dr. Pamela Hackert, the Genesee County Board of Commissioners voted to require all vaccinated and unvaccinated employees and visitors to wear a face mask in their efforts to contain the spread of the COVI-19 Delta variant.(3) I informed Mr. Peivandi I believed that he and I had a duty to discuss the MIOSHA recommendation and the CDC Guidelines concerning this serious matter with the Board. **See the enclosed attachment #4 August 16, 2021, 5:26 PM email**.

Mr. Peivandi never responded to my email concerning this matter. The first time I became aware of Mr Peivandi' expressing his alleged disagreement to my above mentioned email, was when I read it in the imposed Disciplinary Action Notice.

3. **Accusation #3**

Mr. Peivandi falsely accused me of the following as stated in the Disciplinary Action Notice on page two (2) second paragraph.

> *"Following the adjournment of our next scheduled GCRC Board of Commissioners meeting (which began on the following day, August 17, at 10:00 AM), you continued to advocate before the Board in support of your position concerning this issue and in spite of my clear, unambiguous, and final decision to implement a COVID-19 response policy which was partially at odds with your preferred response strategy. You even asked a Genesee County Commissioner, who had attended the active meeting to support your position before our Board to intervene and overturn strategic decisions I made for the GCRC within the scope of my authority."*

This accusation is false and is without merit. I never provided Mr. Peivandi with a preferred response strategy as he states in his above statement. I merely provided Mr. Peivandi via email the recommendation for GCRC to follow the CDC COVID-19 Guidelines as encouraged by MIOSHA and as specified in the August 16, 2021, 8:16 AM and 5:26 PM emails to Mr. Peivandi. **See the enclosed attached email #3 & #4.** Also, Mr.Peivandi never shared with me any communications written or verbally that he disagreed with the sharing of the MIOSHA recommendation.

At no time did I advocate for the GCRC Board to support my recommendation to follow the MIOSHA COVID-19 recommendations as a means to undermine Mr. Peivandi. In fact, I did not discuss COVID-19 Protocol or MIOSHA recommendations on the record. When the meeting was over, I asked Mr. Peivandi if he decided not to discuss COVID-19 response with the board. As the GCRC Human Resources Director, I have a duty to inform both the Managing Director and the GCRC Board of the seriousness of the COVID-19 increasing deadly Delta variant and its possible imposed negative effects on GCRC.

I also have a duty to inform the Board that Genesee County is ranked as a Substantial Transmission Risk County. I also have the responsibility to share with the Board on the MIOSHA recommendation for employers to follow the CDC COVID-19 Guidelines. Since the COVID-19 pandemic began I have been providing MIOSHA and CDC Guidelines and mandates and on the Genesee County Health Department COVID-19 protocols during GCRC Board meetings and via emails.

DEFS RPD RESP 7 - 000098

Mr. Peivandi falsely accused me of asking a Genesee County Commissioner, (Bryant Nolden) to support my position to follow the MIOSHA recommendation before the GCRC Board and to intervene and overturn strategic decisions that Mr. Peivanti made for the GCRC within the scope of his authority.

At no time during or after the GCRC Board meeting did Commissioner Nolden, who also serves as the Genesee County Health Department Board Chair, approach the GCRC Board asking the Board to support a recommendation to follow the recommendation of MIOSHA for employers to follow CDC COVID-19 Guidelines. Commissioner Nolden simply shared with the Board for informational purposes that the Genesee County Board of Commissioners under the advisement of Dr. Pamela Heckert and the Genesee County Health Department is requiring employees to wear a face mask.

Commissioner Nolden did not share this information with the Board for the purpose to intervene and overturn the decision that Mr. Peivandi made for the GCRC as falsely claimed by Mr. Peivandi in the imposed Disciplinary Action Notice. Furthermore, the information that Commissioner Nolden shared with the Board was shared with Mr. Peivandi in my Monday, August 16, 5:30 email. **See attachment # 4 email**. Again, I want to emphasize that Mr. Peivandi did not respond to this email. Under no circumstances should Commissioner Nolden' communication with the Board be one of the basis for my unmerited suspension.

4. Accusation #4

Mr. Peivandi falsely accused me on page two (2) of the Disciplinary Action Notice paragraph three (3) of distributing on August 17, 2021 a memorandum to all GCRC employees entitled MIOSHA Recommendations listing him along with myself without submitting the memo to him for review or approval. Mr. Peivandi's August 16, 2021 email instructed me to send information to the employees about the MIOSHA recommendations and to inform the employees about Genesee County being ranked as a Substantial Transmission Risk County.

I also informed Mr. Peivandi in my August 16, 2021 5:26PM email that I was going to have Monica Pearson (HR Administrative Assistant) send a Memo out to ALL GCRC employees relative to his decision. Mr. Peivandi never communicated with me verbally or by email, telling me he wanted to first review and approve the memo. See attached #4 email and attachment #5 Memo.

GCRC HR Department has been responsible for the GCRC COVID-19 plan and communications., Mr. Peivandi, to my knowledge, has never instructed me to seek his review and approval before sending COVID-19 updates to the GCRC employees and GCRC Board of Commissioners. The only time I recall Mr. Peivandi being asked for permission to release a COVID-19 update memo is by

Monica Pearson, the HR Administrative Assistant in my absence. Mr. Peivandi' name was added as sender-author because he recently requested that his name be added as the MEMO sender – author along with my name. Furthermore, it is important to note that whenever HR sends out COVID-19 information we name the individual (s) from which the information is being originated.

Therefore, Mr. Peivandi could not reasonably conclude as stated in the imposed Disciplinary Action Notice, that the attached memo was written with the intent to cast doubt upon the soundness of the GCRC's COVID-19 response policy and to connect Mr. Peivandi personally to the decision. The memo reminded employees harboring concerns to raise their concerns with the union or leadership. If Mr. Peivandi believed these accusations were true, he could have discussed his concerns with me about the memo and instructed me to rescind the memo. He did not take that action, instead he chose to use this unmerited accusation as a basis by which to impose a two (2) week suspension on me.

5. **Accusation #5**

In the Disciplinary Action Notice Mr. Peivandi states the following:

*"This conduct mirrored several historical examples when you had asked the Board to intervene and overturn strategic decisions I made for GCRC within the scope of my authority."  Mr. Peivandi also states the following: "In light of your clear and evident disagreement with my decision regarding this matter and after considering numerous historical examples whereby you have attempted to undermine my strategic directives, I have come to the conclusion that I have no choice but to remedy this situation with disciplinary action."*

This accusation is false and is without merit. Mr. Peivandi can not provide one factual example by which this accusation is true. In my role as the Human Resources Director, I am often called upon by the Board to provide my opinion and or recommendation on a matter. My responses are honest, factual, and well reasoned. There are times my position may differ with the Managing Director's position and at times differ with my colleagues and Legal Team. However, at no time do I take a position or give recommendations to the Board for the sole purpose to undermine the strategic directives of Mr. Peivandi as stated in the Disciplinary Action Notice.

The GCRC Board makes its own decisions to support or not to support any proposed action. I only provide the appropriate information as requested or as initiated by me in carrying out my duty as the GCRC Human Resource Director. Mr. Peivandi' unmerited false accusation only serves to demonstrate his Retaliation against me,
Mr. Peivandi on page two last paragraph of the imposed Disciplinary Notice, states the following:

> *"In light of your clear and evident disagreement with my decision regarding this matter and after considering numerous historical examples whereby you have attempted to undermine my strategic directives, I have come to the conclusion that I have no choice but to remedy this situation with disciplinary action. Specifically, I have selected to impose disciplinary action for the following reasons. Please see the enclosed Disciplinary Action Notice for full details on the reason specified for the imposed disciplinary action.*

I would like to draw your attention to the second page and last paragraph of the Disciplinary Action Notice reason - 1. Insubordinate failure to Follow Directives. Mr. Peivnadi draws emphasis to the July 1, 2021 specific directives with respect to the professional relationship and the exercise of my duties and authority within GCRC that he emailed me on July 1, 2021.  **See attachment #6 July 1, 2021 letter sent to me via email. Also, see attachment #7 my email response to Mr. Peivandi' July 1, 2021 letter.**


### V. <u>Tampering with Previous Complaint Investigation</u>

On January 28, 2021, I filed a formal complaint with the GCRC Board for harassment, intimidation, retaliation, differential treatment, and discrimination that I was subjected to under Mr. Peivandi. **See the attached #8 January 28, 2021, complaint.**

Michigan County Road Commission Self Insured Pool (MICRCSIP) retained Attorney Craig Lange to investigate my complaint. The GCRC Policy states that the Board Chair, not MICRCSIP, shall designate an appropriate individual to investigate the matter and prepare a written response to the complaint as expeditiously as possible.  MICRCSIP involvement at this level was questionable, because at this time I had not filed an EEOC complaint or a lawsuit against Mr. Peivandi or GCRC.

On May 24, 2021, at the Board' request, I met with Commissioner Cloyce Dickerson, Commissioner Tim Elkins and Mr. Peivandi. The purpose of this meeting was to allow Mr. Peivandi and I, an opportunity to discuss our working relationship. During this meeting I was blindsided by Commissioner Elkins, when he served me with a letter addressed to me at my home addressed from Attorney Craig Lange that was written April 27, 2021. **Please see enclosed letter attachment #9 from Attorney Lange.** Mr. Elkins provided Commissioner Dickerson and Mr. Peivandi with the letter at that time.. The letter was a letter from Attorney Lange concluding his findings into my January 28, 2021 complaint to the GCRC Board.

As a result of this I would like the following to be investigated; I believe the investigation into my complaint earlier this year was tampered with:

1. What was the official GCRC Board response regarding my January 28, 2021 complaint I filed against Mr. Peivandi?
2. Under what authority was Commissioner Elkins authorized to distribute a letter to Board Chair Commissioner Dickerson, Mr. Peivandi, and myself, from Attorney Lange that was personally addressed to me using my personal home address that I never received in the mail?
3. How did Commissioner Elkins gain possession of the letter without the Chair of the Board and remaining GCRC Board members knowledge?
4. Who authorized Mr. Peivandi to issue me with five (5) retaliatory directives as a result of my complaint to the GCRC Board?

Mr. Peivandi' July 1, 2021, letter to me comprised five (5) retaliatory directives that I am to adhere to. Mr. Peivandi is using Directive one (1) and directive three (3) as the basis for my unmerited insubordination suspension. **Please see attachment # 6.July first email letter.**

## VI. Conclusion

Insubordination in the workplace refers to an **employee's intentional refusal to obey an employer's lawful and reasonable orders**. The five (5) Directives that were imposed on me as an act of retaliation because of my protective activity are not lawful and reasonable. I have never intentionally refused to obey the directives.

The GCRC Board has grossly failed to protect me from being subjected to discrimination, retaliation and unlawful acts under the leadership of Mr. Peivandi. As a result Mr. Peivandi has been allowed to continue the prolongation of his unlawful actions that has unquestionably led to the unmerited and retaliatory two (2) week suspension that was imposed on me Thursday, August 19, 2021. I respectfully request a fair and just investigation into this situation.

Respectfully,

//signed//

Donna D. Poplar

.