2003 WL 22681567
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK
COURT RULES BEFORE CITING.

Court of Appeals of Michigan.

Tom JOUBRAN, Plaintiff-Appellee,
v.
COUNTY OF GENESEE, Genesee County
Prosecutor, Arthur Busch, Genesee Chief
Assistant Prosecutor, and Genesee Community
Action Agency Director, Defendants-Appellants,
and
Brenda WILLIAMS and Donna Poplar, Defendants.

No. 238801.
|
Nov. 13, 2003.

Before: GRIFFIN, P.J., and MURPHY and JANSEN, JJ.

[UNPUBLISHED]

PER CURIAM.

**\*1** Defendants-appellants County of Genesee, Genesee County Prosecutor, Arthur Busch, Genesee Chief Assistant Prosecutor,[1] and Genesee Community Action Agency Director (defendants) appeal by leave granted the circuit court's order denying their motion for summary disposition. We reverse.

[1] Brenda Williams in her official capacity only.

I

Plaintiff Tom Joubran brought this action based on what he alleges is a pattern of harassment and a false investigation of him by defendant Arthur Busch, with participation by the other individual defendants. Arthur Busch is the Genesee County Prosecutor, Brenda Williams is the Chief Assistant Prosecutor for Genesee County and Donna Poplar is the former Director of the Genesee Community Action Agency.

Plaintiff is a local businessman in Genesee County. He alleges that the conduct serving as the basis of his complaint arose after he failed to provide false testimony before the Michigan Attorney Grievance Commission during a hearing on a petition for reinstatement to practice law filed by Busch's friend and former Genesee County Prosecutor, Robert Leonard. Plaintiff's amended complaint against defendants alleged claims of intentional infliction of emotional distress, conversion, and fraud and misrepresentation.[2]

[2] The claims against the county were based on vicarious liability for the alleged conduct of Busch, Williams, and Poplar.

Plaintiff's claim of conversion stems from the following events. In 1998, Busch and the Michigan Attorney General's office obtained an investigatory subpoena pursuant to MCL 767A.2 for April Parish, a young woman who has worked for plaintiff for years. Parish was one of the individuals from whom the prosecutor's office attempted to obtain information regarding underage drinking at Bugsy's Bar and Grill, an establishment owned and operated by plaintiff's son. Plaintiff owned the building in which Bugsy's was located. In her deposition taken pursuant to the subpoena, Parish testified to sexual conduct with plaintiff when she was fifteen years old. Plaintiff has submitted an affidavit from Parish in conjunction with the present suit, in which she alleged that a member of the Genesee County Sheriff's Department approached her at her home and attempted to force her to provide testimony regarding plaintiff. Parish further stated that this individual, Sergeant John Fontana, and Busch threatened her with criminal prosecution if she did not give false testimony against plaintiff. Parish indicated that the testimony she previously provided regarding plaintiff was coerced by Busch and others acting in his behalf and that she felt she had no alternative but to provide false testimony regarding plaintiff.

At some point, plaintiff claims defendant Donna Poplar approached him and told him that criminal charges would be filed against him based on his sexual conduct with a minor (Parish). Apparently, this was one of several aspects of an ongoing criminal investigation involving plaintiff. According to plaintiff, Poplar, Busch, and Williams conspired to extort $200,000 from him. Plaintiff met with Poplar and gave her $50,000 in order to have the investigation quashed. He taped his conversations with Poplar and claims that statements she made indicated she gave some of the money to Busch and Williams. Plaintiff brought the conversion claim against

defendants based on the fact that he gave money to Poplar, who in turn purportedly shared it with Busch and Williams. [3]

[3] Poplar was in fact charged with conspiracy to bribe a public officer and obtaining more than $100 by false pretenses. Her first trial resulted in a hung jury. Poplar's second trial resulted in her conviction for obtaining more than $100 by false pretenses and an acquittal on the conspiracy charge. There were no charges of any kind brought against any other Genesee County employee, including defendants.

 *2  Plaintiff based his intentional infliction of emotional distress claim on several incidents which occurred over the course of approximately 3½ years. The first incident on which plaintiff relied is a criminal charge for felonious assault, in violation of MCL 750.82, brought against him in Genesee Circuit Court by the prosecutor's office in 1995. The charge arose from a complaint that plaintiff pointed a gun at a highway worker. Plaintiff entered a no contest plea to the charge of attempted felonious assault and was sentenced to a term of three years' probation, two hundred hours of community service and costs.

In 1997, Busch initiated a civil action for abatement of a nuisance against, *inter alia,* Bugsy's Bar and Grill. This suit was based on allegations of underage drinking and complaints from neighbors of excessive noise and disturbances. The action was brought against plaintiff, the owner of the building in which Bugsy's was located, as well as his son, Michael Joubran, the owner of the business known as Bugsy's. The portion of the action against plaintiff and his company, which owned the premises, was resolved by entry of a consent restraining order in April 1998. In the present case, plaintiff asserts that Busch's conduct in causing subpoenas to be issued to young women and directing the questioning of neighbors of Bugsy's and various young people regarding whether they obtained drinks at Bugsy's constituted harassment and infliction of emotional distress.

In January 1998, a written request for information regarding the ownership of several parcels of property was transmitted by a paralegal in the drug unit of the Genesee County prosecutor's office to the Genesee Township treasurer's office. Plaintiff testified at his deposition in the case at hand that he was told of the request by the treasurer at that time, Fred Muhl. Plaintiff viewed the request as an attempt to poison his reputation in the eyes of township government. Plaintiff has submitted the affidavit of Muhl, in which Muhl acknowledged that he received from the prosecutor's office a request for information regarding the ownership of certain parcels of property and that he called plaintiff to ask if plaintiff owned any of the listed properties. Muhl affied that he did not realize that the request for information was related to an investigation of plaintiff, and that when Busch became aware of the fact that he had directly contacted plaintiff, Busch threatened him with obstruction of justice charges.

Plaintiff also alleges that Busch also contacted the Genesee County assessor, Steve Nagy, requesting information regarding assessments of property owned by plaintiff, In an affidavit submitted in the present action, Nagy maintained that Busch spoke to him in an intimidating tone and tried to get him to admit that plaintiff had received favorable treatment with regard to his property assessments.

Plaintiff has also submitted the affidavit of Joseph Balducci, allegedly his cohort in certain criminal activity, who indicated that he was taken to a one-man holding cell in the Genesee County Jail, where he was purportedly stripped, shackled, handcuffed, and deprived of his medication. According to Balducci, two deputies responded to his pleas, but rather than helping him, they knocked him down and rubbed the shackles up and down his legs in order to inflict pain. Balducci was ultimately taken to the hospital due to chest pains, where Busch and others purportedly told Balducci that his stay would be more to his liking if he would cooperate and provide information regarding plaintiff. Busch and other law enforcement officials inquired about any dealings Balducci had with plaintiff.

 *3  In further support of his claims, plaintiff also referred to other incidents, unrelated to his situation, involving Busch.

In testimony given at Poplar's criminal trial, Busch denied having received any money from Poplar. Busch also testified that he had not spoken with Poplar for several months prior to her alleged request for money from plaintiff. Busch also affied in the instant case that he never entered into an agreement with Poplar to extort money from plaintiff or to alter the conduct of any investigation in return for the payment of money, and that he never received any money from Poplar or anyone else which had been obtained from plaintiff.

In deposition testimony, Williams also denied participation in or knowledge of any agreement with Poplar to extort money from plaintiff, or to alter a criminal investigation in return for

payment of any money. Williams also denied having received any money from plaintiff.

Defendants moved for summary disposition pursuant to MCR 2.116(C)(10) regarding all counts of plaintiff's amended complaint. However, following a hearing, the circuit court denied defendants' motion. Defendants now appeal by leave granted the circuit court's December 17, 2001, order denying summary disposition.

II

This case involves two separate standards with respect to defendants' motion for summary disposition. Regarding defendants' argument that Arthur Busch is absolutely immune from liability, although defendants brought their motion for summary disposition with respect to this issue pursuant to MCR 2.116(C)(10), such a motion should be brought pursuant to MCR 2.116(C)(7). *Fane v. Detroit Library Comm,* 465 Mich. 68, 74; 631 NW2d 678 (2001). "Where summary disposition is granted under the wrong rule, Michigan appellate courts, according to longstanding practice, will review the order under the correct rule." *Spiek v. Dep't of Transportation,* 456 Mich. 331, 338 n 9; 572 NW2d 201 (1998). Motions for summary disposition are reviewed de novo. *Id.* "Under MCR 2.116(C)(7), summary disposition is proper when a claim is barred by immunity granted by law." *Id.* "To survive such a motion, the plaintiff must allege facts justifying the application of an exception to governmental immunity." *Id.* (citation omitted). "We consider all documentary evidence submitted by the parties, accepting as true the contents of the complaint unless affidavits or other appropriate documents specifically contradict them." *Id.* (citations omitted).

Additionally, we review defendants' remaining issues pursuant to MCR 2.116(C)(10) because the parties and the circuit court relied on documents outside the pleadings. *Kubisz v Cadillac Gage Textron, Inc,* 236 Mich.App 629, 633 n 4; 601 NW2d 160 (1999). "A trial court's grant or denial of summary disposition under MCR 2.116(C)(10) is reviewed de novo on appeal." *Liberty Mutual Ins Co v Michigan Catastrophic Claims Ass'n,* 248 Mich.App 35, 40; 638 NW2d 155 (2001). "A motion for summary disposition tests whether there is factual support for a claim." *Universal Underwriters Group v Allstate Ins Co,* 246 Mich.App 713, 720; 635 NW2d 52 (2001). "Affidavits, pleadings, depositions, admissions, and documentary evidence are considered in reviewing a motion for summary disposition pursuant to MCR 2.116(C)(10), and the evidence is viewed 'in the light most favorable to the party opposing the motion.' " *Id.,* quoting *Quinto v. Cross & Peters Co,* 451 Mich. 358, 362; 547 NW2d 314 (1996). "Summary disposition is proper under MCR 2.116(C)(10) if the documentary evidence shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law." *Universal Underwriters, supra* at 720.

III

***4** First, defendants argue that Busch was acting within the scope of his executive and quasi-judicial authority and is absolutely immune from tort liability arising from any of the conduct alleged by plaintiff. We agree.

MCL 691.1407(5) provides:

> A judge, a legislator, and the elective or highest appointive executive official of all levels of government are immune from tort liability for injuries to persons or damages to property if he or she is acting within the scope of his or her judicial, legislative, or executive authority.

It is undisputed that Busch, as the prosecuting attorney for Genesee County, is an "elective or highest appointive executive official" within the meaning of the statute. See *Bischoff v. Calhoun Co Prosecutor,* 173 Mich.App 802, 806; 434 NW2d 249 (1988).

In *Marrocco v. Randlett,* 431 Mich. 700, 710-711; 433 NW2d 68 (1988), our Supreme Court described the parameters of the statutory immunity provided by MCL 691.1407(5):

> We hold that the highest executive officials of local government are not immune from tort liability for acts not within their executive authority. The determination whether particular acts are within their authority depends on a number of factors, including the nature of the specific acts alleged, the position held by the official alleged to have performed the acts, the charter, ordinances, or other local law defining the official's authority, and the structure and allocation of powers in the particular level of government.

In *American Transmissions, Inc v. Attorney General,* 454 Mich. 135; 560 NW2d 50 (1997), our Supreme Court rejected a "malevolent-heart exception" to this immunity, finding that this Court had incorrectly established "an intentional tort exception to governmental immunity for the intentional use or misuse of a badge of governmental authority for a purpose unauthorized by law" in *Gracey v. Wayne Co Clerk,* 213 Mich.App 412; 540 NW2d 710 (1995), abrogated in *American Transmissions, supra* at 141-143. The Court noted, *id.* at 143-144, that

> This Court's *Marrocco* opinion does not explicitly adopt an intent exception to governmental immunity, noting that a variety of factors must be considered to determine whether an official is acting with[in] the scope of "executive authority." 431 Mich. 711. This Court did not include "motive" in that roster of considerations, and declined "to rule with specificity concerning the authority of officials" in that case. 431 Mich. 711. Further, the language taken from the *Smith [v Dept of Public Health,* 428 Mich. 540; 410 NW2d 749 (1987) (opinion of Brickley, J.) ] plurality, 428 Mich. 611, in *Marrocco* at 707-708, adds no such test.

Consequently, the Court in *American Transmissions* concluded that an inquiry into the official's subjective state of mind is not a factor to consider when determining whether he or she is acting in the scope of his or her executive authority. *Id.* at 143-144, 143 n 10.

*5 Here, plaintiff contends that Busch engaged in a pattern of conduct outside the scope of his executive authority. Specifically, plaintiff references the ongoing investigation of himself that yielded no charges against him. Plaintiff further alleges that Busch has broken the law by suborning perjury from a number of witnesses in order to bring false criminal charges against him.

However, we conclude that the alleged conduct that forms the basis of plaintiff's complaint against Busch is conduct that falls within the scope of Busch's executive authority as the county prosecutor. MCL 49.153 provides: "The prosecuting attorneys shall, in their respective counties, appear for the state or county, and prosecute or defend in all the courts of the county, all prosecutions, suits, applications and motions, whether civil or criminal, in which the state or county may be a party or interested."

In *Bloss v. Williams,* 15 Mich.App 228; 166 NW2d 520 (1968), this Court addressed the prosecutor's duties in the context of common law immunity. Although the case was decided before the Legislature enacted the statutory governmental immunity provision, common law governmental immunity was very similar to the current statutory provision. The Court indicated that " '[a] district or prosecuting attorney is not liable for damages for acts and omissions within the scope of official duties, although he may be held responsible for acts beyond that scope." ' *Id.* at 231, quoting 27 CJS, District and Prosecuting Attorneys, § 16, p 680. The *Bloss* Court determined that "[a]n investigation of circumstances under which a warrant for arrest is justified is within the scope of the duties and powers of a prosecuting attorney." *Id.* at 233. Accordingly, the prosecutor's duties include the duty to conduct an investigation of potentially criminal activity, and such duty is absolutely immune from liability in accordance with the statute. See also *Bischoff, supra* at 810. Cf ., *Fluellen v United States Dept of Justice Drug Enforcement Administration,* 816 F Supp 1206, 1215-1216 (ED Mich.1993) (police criminal investigations and detentions constitute part of a legitimate governmental function).

In the instant case, aside from the allegations that Busch coerced Parish and Balducci to provide false testimony against plaintiff, all of the alleged misconduct by Busch

entails investigations into possible unlawful activity on the part of plaintiff. In his deposition testimony, plaintiff claims that the maintenance of a criminal action against him for felonious assault and the civil action against Bugsy's Bar & Grill for abatement of a nuisance were part of the alleged campaign of harassment. As prosecuting attorney, however, Busch is specifically authorized and directed by statute to "prosecute or defend ... all prosecutions, suits, applications and motions whether civil or criminal, in which the state or county may be a party or interested." MCL 49.153. Moreover, Busch is specifically authorized by statute to bring civil actions for the abatement of nuisances. MCL 600.3805. Thus, it is clear that his prosecution of these actions was within his executive authority.

**\*6** Plaintiff also complains of the issuance of subpoenas and the questioning of potential witnesses regarding underage drinking at Bugsy's, possible intentional under-assessment of property taxes, and any relationship between his real property holdings in Genesee Township and drug proceeds. A prosecuting attorney's executive authority, however, encompasses not only those expressly set forth by statute, but "also such additional functions as may be necessarily implied from those specifically mentioned." *Bloss, supra* at 233. Among the additional functions is "the gathering of evidence in the preparation of [a] case." *Id.* at 235. Questioning witnesses and issuing subpoenas unquestionably falls within the "gathering of evidence." Plaintiff does not dispute that Busch's investigation of Parish was pursuant to an investigative subpoena, obtained pursuant to MCL 767A.2. There being neither an allegation nor any possible inference that any of this claimed conduct was illegal, Busch's actions in this regard fell within the prosecuting attorney's executive authority. Busch is therefore entitled to absolute immunity from tort liability arising from any conduct in pursuit of evidence of underage drinking, under-assessment of or a drug connection to plaintiff's property. *American Transmissions, supra; Bloss, supra.*

Plaintiff further argues, and the circuit court held, that the immunity provided by MCL 691.1407(5) is inapplicable insofar as Busch was attempting to suborn perjured testimony. However, while the existence of immunity must indeed be judged by, *inter alia,* the "nature of the specific acts alleged," *Marrocco, supra* at 710, the nature of the specific acts alleged regarding Parish and Balducci involved obtaining testimony or evidence regarding potential criminal activity. Plaintiff does not contest that this function of a prosecuting attorney, in itself, is within his executive authority. Consequently, if the nature of the underlying conduct is within Busch's executive authority, then plaintiff's claims can be actionable only if Busch's purpose for engaging in that conduct renders immunity inapplicable. This proposition, requiring an impermissible inquiry into Busch's subjective state of mind, has been squarely rejected by the Michigan Supreme Court in *American Transmissions, supra.*

Consequently, under the present circumstances where it is clear that Busch was exercising his duly authorized, legitimate investigative duties as a prosecuting attorney, *Bloss, supra,* and plaintiff has failed to allege facts justifying the application of an exception to governmental immunity, *Spiek, supra,* we conclude that Busch was acting within the scope of his executive authority and is absolutely immune from tort liability arising from any of the conduct alleged by plaintiff. MCL 691.1407(5). The circuit court therefore erred in denying summary disposition pursuant to MCR 2.116(C)(7) in favor of Busch.

IV

**\*7** Next, defendants argue that the circuit court erred in denying their motion for summary disposition with respect to plaintiff's conversion claim. We agree.

Plaintiff supports his allegations of conversion with a transcript of a telephone conversation he had with Poplar, during which Poplar assured plaintiff that she gave money to Busch. Defendants contend that there is no admissible evidence demonstrating that Busch or Williams wrongfully exerted dominion over plaintiff's money. Plaintiff counters that the proposed evidence is admissible because it is either not hearsay or the proposed evidence falls under an exception to the hearsay rule.

"The tort of conversion is 'any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein.' " *Head v Phillips Camper Sales & Rental, Inc,* 234 Mich.App 94, 111; 593 NW2d 595 (1999), quoting *Foremost Ins Co v. Allstate Ins Co,* 439 Mich. 378, 391; 486 NW2d 600 (1992). See also *Thoma v. Tracy Motor Sales,* 360 Mich. 434, 438; 104 NW2d 360 (1960); *Brennan v. Edward D Jones & Co,* 245 Mich.App 156, 158; 626 NW2d 917 (2001). "The gist of

conversion is the interference with control of the property." *Sarver v. Detroit Edison Co,* 225 Mich.App 580, 585; 571 NW2d 759 (1997), quoting Prosser & Keeton, Torts (5 [th] ed), § 15, p 102.

The transcripts of the Poplar conversation are less than clear. After plaintiff indicated to Poplar that he trusted her to give "the money" to Busch, Poplar replied, "Yeah Busch Busch [sic] has it. Brenda's up on it. Ev [sic] everything is straight. Just stop asking me that question. You make me paranoid. You make me feel, you know, you make me feel like you...." Plaintiff then stated, "No, honey, I'm just worried I don't want nobody I don't want anybody ... to give the money to him but you." Plaintiff also asked Poplar if she had any of the money left, to which Poplar replied, "Why would I? No. Why?" Poplar then indicated that she "stuck [her] neck out on the, on the limb for this, for [plaintiff]." After plaintiff asked Poplar, "Who you gonna call, Busch?," Poplar stated, "I'm gonna, I'm gonna, when I call 'em I'm, I'm gonna talk to both of 'em [sic] I'll put 'em on a three way." Regarding Williams, Poplar stated, "She, she feels that she doesn't, first of all she don't, she doesn't want you to know that she knows or a part of anything and that's only fair, ah, so she'd rather for you to go through the process and the formality she don't want to get caught up in nothing like that, all she's doing is protecting herself, that's only fair."

Defendants first argues that Poplar's statements are not admissible against Busch and Williams pursuant to MRE 801(d)(2)(A), (C), or (E). MRE 801(d)(2) provides, in relevant part that:

> (d) Statements Which are Not Hearsay. A statement is not hearsay if -
>
> (2) *Admission by Party-Opponent.* The statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity ... or (C) a statement by a person authorized by the party to make a statement concerning the subject ... or (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy on independent proof of the conspiracy.

**\*8** With respect to plaintiff's argument that the evidence falls under MRE 801(d)(2)(A) and/or (C), plaintiff merely states, "As this Court is aware, it is the *allegation* of the Plaintiff that MS. POPLAR was acting in a 'representative capacity', [sic] as well as being 'authorized' by her co-conspirators, MR. BUSCH and MS. WILLIAMS." Plaintiff has failed to provide any evidence that Williams or Busch made any statement in an individual capacity or that Poplar was acting in a representative capacity for Williams or Busch in either their individual or official capacities, and has failed to demonstrate how Poplar was authorized by Busch and Williams to make the statements. Accordingly, we conclude that the proposed evidence does not fall under MRE 801(d)(2)(A) or (C).

We also hold that the proposed evidence does not fall under MRE 801(d)(2)(E). In *People v. Bushard,* 444 Mich. 384, 394; 508 NW2d 745 (1993), the Michigan Supreme Court indicated that in order to qualify as nonhearsay pursuant to MRE 801(d)(2)(E), "the statement must be made 'during the course' *and* 'in furtherance' of the conspiracy. If either requirement is unmet, the statement must be excluded." (Emphasis in original.) Before a trial court admits statements by a coconspirator, made during the course and in furtherance of the conspiracy, there must be proof of the conspiracy by independent evidence. *People v. Vega,* 413 Mich. 773, 780; 321 NW2d 675 (1982). "Direct proof of the conspiracy is not essential; instead, proof may be derived from the circumstances, acts, and conduct of the parties." *People v. Justice (After Remand),* 454 Mich. 334, 347; 562 NW2d 652 (1997). Thus, to admit a coconspirator's statement, there must be proof by a preponderance of the evidence. *Vega, supra* at 782.

Plaintiff contends that the affidavit of Patricia Lazzio, another prosecutor, establishes independent proof that the conspiracy existed. Lazzio stated that Williams approached her and indicated that " 'they've got Donna Poplar on tape saying that she gave $50,000 to Art Busch and me (Brenda Williams) at a Bob Evans Restaurant." ' Lazzio indicated that upon her information and belief, there had been no reference to a "Bob Evans Restaurant" in any of the evidence presented at Poplar's criminal trial or in the evidence precluded from Poplar's criminal trial, and that there would be no way for Williams to know Poplar had been taped unless Williams had personally spoken to Poplar regarding the same. Lazzio believed that Williams was involved in or aware of the "conspiracy" based on Williams' assertion that she would have to "pray" regarding the matters. Plaintiff also points to his assertions that Busch hired Williams as the chief assistant prosecuting attorney without experience as a prosecutor, that Williams

was acquainted with Poplar, and that Williams contended that she did not trust the FBI.

We conclude that such evidence does not establish by a preponderance of the evidence that Williams participated in the alleged conspiracy. Further, plaintiff has not provided any independent evidence that Busch engaged in the alleged conspiracy. Plaintiff contends that the fact that Poplar was aware of the criminal investigation of plaintiff provides circumstantial evidence that the conspiracy existed. However, a connection is lacking between this assertion and proof of a conspiracy, between Poplar, Williams, and Busch, to extort plaintiff's money. Accordingly, Poplar's statements are not admissible under MRE 801(d)(2)(E).

 **\*9** Defendants further contend that the statement is not admissible pursuant to MRE 804(b)(3). MRE 804(b)(3) provides:

(b) Hearsay Exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(3) *Statement Against Interest.* A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicated the trustworthiness of the statement.

In *People v. Schutte,* 240 Mich.App 713, 715-716; 613 NW2d 370 (2000), quoting *People v. Barrera,* 451 Mich. 261, 268; 547 NW2d 280 (1996), this Court discussed the admissibility of statements under MRE 804(b)(3): "[R]eview of the admission of a statement against penal interest presents three subissues: '(1) whether the declarant was unavailable, (2) whether the statement was against penal interest, [and] (3) whether a reasonable person in the declarant's position would have believed the statement to be true....' " The *Schutte* Court noted that, "[g]enerally, we presume that a codefendant's inculpatory hearsay statement against another codefendant is unreliable and therefore inadmissible under MRE 804(b)(3)." *Id.* at 717. The Court further explained that "[t]he entire hearsay statement of an accomplice may be admissible against an accused, however, where the declarant's inculpatory statement is made in narrative form, by his own initiative, and is reliable because as a whole it is against the declarant's own interest." *Id.* In discussing the reliability of the declarant's statement, this Court reiterated the following principles:

"In evaluating whether a statement against penal interest that inculpates a person in addition to the declarant bears sufficient indicia of reliability to allow it to be admitted as substantive evidence against the other person, courts must evaluate the circumstances surrounding the making of the statement as well as its content.

The presence of the following factors would favor admissibility of such a statement: whether the statement was (1) voluntarily given, (2) made contemporaneously with the events referenced, (3) made to family, friends, colleagues, or confederates-that is, to someone to whom the declarant would likely speak the truth, and (4) uttered spontaneously at the initiation of the declarant and without prompting or inquiry by the listener.

On the other hand, the presence of the following factors would favor a finding of inadmissibility: whether the statement (1) was made to law enforcement officers or at the prompting or inquiry of the listener, (2) minimizes the role or responsibility of the declarant or shifts the blame to the accomplice, (3) was made to avenge the declarant or to curry favor, and (4) whether the declarant had a motive to lie or distort the truth.

 **\*10** Courts should also consider any other circumstance bearing on the reliability of the statement at issue. While the foregoing factors are not exclusive, and the presence or absence of a particular factor is not decisive, the totality of the circumstances must indicate that the statement is sufficiently reliable to allow its admission as substantive evidence although the defendant is unable to cross-examine the declarant. [Citation omitted]" [*Id.* at 718-719, quoting *People v. Poole,* 444 Mich. 151, 165; 506 NW2d 505 (1993).]

We conclude that Poplar's taped conversations are not admissible pursuant to MRE 804(b)(3). First, it appears from the context of the conversation between plaintiff and Poplar that Poplar's statements were not voluntarily given, in that plaintiff would specifically ask her whether she gave Busch the money or whether Poplar had any of the money. Second, Poplar clearly minimized her own role with respect to the

money by stating that she gave all the money to Busch and Williams and that she no longer had any of the money. Third, there is a strong inference that Poplar had a motive to lie in order to obtain money from plaintiff for herself under the guise that the money was to act as a bribe to have Busch and Williams drop the investigation of plaintiff. Accordingly, the evidence does not bear a sufficient indicia of reliability that would allow the statements to be used as substantive evidence against Busch or Williams.

In sum, Poplar's statements in her telephone conversations with plaintiff are not admissible against Busch or Williams under any exception to the hearsay rules. Plaintiff bore the burden of providing admissible evidence to create a genuine factual issue regarding Busch's or Williams' participation in any conspiracy with Poplar or their receipt of any money from Poplar. *Neubacher v Globe Furniture Rentals, Inc,* 205 Mich.App 418; 522 NW2d 335 (1994). Plaintiff failed to meet that burden, and the circuit court therefore clearly erred in denying summary disposition on the conversion claim.

V

Next, defendants argue that the circuit court improperly denied their motion for summary disposition with respect to plaintiff's claim for intentional infliction of emotional distress. We agree.

In order to establish a valid claim of intentional infliction of emotional distress, a plaintiff must show: "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Graham v. Ford,* 237 Mich.App 670, 674; 604 NW2d 713 (1999). The *Graham* Court further explained:

> Liability for the intentional infliction of emotional distress has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. *Doe v. Mills,* 212 Mich.App 73, 91; 536 NW2d 824 (1995). Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. *Id.* It is not enough that the defendant has acted with an intent that is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort. *Roberts v. Auto-Owners Ins Co,* 422 Mich. 594, 602-603; 374 NW2d 905 (1985), quoting Restatement Torts, 2d, § 46, comment d, pp 72-73. In reviewing a claim of intentional infliction of emotional distress, we must determine whether the defendant's conduct is sufficiently unreasonable as to be regarded as extreme and outrageous. *Doe, supra* at 92. The test is whether "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' " *Roberts, supra* at 603. [*Id.* at 674-675.]

**\*11** Plaintiff's claim for intentional infliction of emotional distress is based on a combination of (1) an alleged agreement among Poplar, Busch, and Williams to extort money from him, and (2) an alleged pattern of harassment by the prosecutor's office. However, as we have previously determined in our analysis of plaintiff's conversion claim, see text, issue IV, *supra,* defendants have introduced positive evidence that neither Busch nor Williams participated in any extortion scheme with Poplar, and plaintiff has come forward with no admissible evidence to the contrary. The intentional infliction claim must rise or fall, therefore, on the allegations of harassment through the conduct of a criminal investigation and the maintenance of civil and criminal proceedings against plaintiff.

With regard to this aspect of defendant's intentional infliction of emotional distress claim, we conclude that defendants are entitled to summary disposition. First, as this claim pertains to Busch, we have already determined that the alleged conduct falls within a prosecuting attorney's executive authority, such that Busch is immune from tort liability. See text, issue III, *supra.*

With regard to Williams, the Genesee County Chief Assistant Prosecutor, defendants argue that the circuit court erred in denying summary disposition because there was no evidence that Williams participated in any of the alleged conduct giving rise to plaintiff's claim for intentional infliction of emotional distress. We agree.

In support of plaintiff's claim for intentional infliction of emotional distress, plaintiff alleges that Williams was a coconspirator in an extortion plot to obtain plaintiff's money. Plaintiff contends that there is circumstantial evidence of Williams' involvement because Williams had knowledge of

confidential information, and other facts and circumstances surrounding the exchange between plaintiff and Donna Poplar, that Williams would not have been privy to unless she had direct contact with Poplar during the course of the conspiracy. Plaintiff also points to the fact that Williams was hired as the chief assistant prosecuting attorney at the sole discretion of Busch even though she had no special training and no prior position with the prosecutor's office, and that Williams has not tried a case and has not been directly involved in any criminal prosecution. Finally, plaintiff asserts that Williams had known Poplar since seventh grade and had represented Poplar's family members in the past, and that Williams admitted that she did not trust the FBI, which investigated Poplar following the "extortion conspiracy."

However, it is undisputed that Williams did not become an assistant prosecuting attorney until the fall of 1998. It is also undisputed that, with the exception of the alleged extortion scheme, all of the alleged conduct by Busch or the prosecutor's office on which plaintiff bases his claim for intentional infliction of emotional distress occurred prior to Williams' hire.

**\*12** Because Poplar's statements taken from a taped telephone conversation with plaintiff are, as a matter of law, inadmissible against either Busch or Williams, [4] there is no evidence of any conduct by Williams which could support a claim for intentional infliction of emotional distress. Plaintiff has otherwise failed to present any evidence that either directly or circumstantially implicates Williams as having engaged in conduct that would give rise to plaintiff's claim for intentional infliction of emotional distress. We simply cannot infer Williams' involvement in the alleged conspiracy based on the fact that Busch hired her as the chief assistant prosecuting attorney without experience as a prosecutor, Williams' acquaintance with Poplar, and Williams' contention that she did not trust the FBI. Such evidence does not circumstantially demonstrate Williams' involvement in the alleged conspiracy, and certainly provides no evidence of extreme or outrageous conduct committed by Williams. Accordingly, the circuit court erred in denying defendants' motion for summary disposition with respect to plaintiff's claim for intentional infliction of emotional distress against Williams.

[4] See text, issue IV, *supra*.

## VI

Finally, defendants argue that the circuit court erred in denying their motion for summary disposition with respect to plaintiff's claim for fraud and misrepresentation. We agree.

Defendants argue that plaintiff's claim for fraud, contained in his amended complaint, fails because plaintiff did not state a claim on which relief could be granted, based on the premise that no person could reasonably rely on a clearly unenforceable promise to drop criminal charges in return for payment of an illegal bribe, and second, that plaintiff specifically denied in his deposition testimony that he paid Poplar money in reliance on any such representation, as he claimed that he paid Poplar the money in order to "set up" Busch. Plaintiff counters that his claim for fraud is not based on an unenforceable illegal agreement, but is based on defendants' fraudulent inducements and misrepresentations that plaintiff would be prosecuted based on false testimony for crimes he did not commit, and that defendants' illegal actions in extorting money from plaintiff constitute his claim for fraud.

In *Kassab v Michigan Basic Property Ins Ass'n,* 441 Mich. 433, 442; 491 NW2d 545 (1992), the Michigan Supreme Court set forth the elements for a claim of fraud or misrepresentation as follows:

> "The general rule is that to constitute actionable fraud it must appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury." [Citations omitted.]

See also *DiPonio Construction Co v. Rosati Masonry Co, Inc,* 246 Mich.App 43, 51; 631 NW2d 59 (2001).

**\*13** We hold that plaintiff has failed to state a claim on which relief could be granted, and that there is no genuine issue of material fact with respect to plaintiff's claim for fraud and misrepresentation. A party's reliance on a misrepresentation must be reasonable in light of the circumstances. *Novak v. Nationwide Mut Ins Co,* 235 Mich.App 675, 689-690;

🚩 599 NW2d 546 (1999). Further, "[a]n allegation of fraud based on misrepresentations made to a third party does not constitute a valid fraud claim." 🚩 *Int'l Brotherhood of Electrical Workers, Local Union No 58 v McNulty,* 214 Mich.App 437, 447; 🚩 543 NW2d 25 (1995).

First, in connection with the complaint, plaintiff has made very general allegations in connection with alleged misrepresentations made to him with respect to Busch and Williams. The specific allegations indicate that Busch and Williams communicated false information to Poplar for the purpose of threatening plaintiff and in order to extort money from him. Thus, the complaint itself is based on misrepresentations made by a third party; and hence, plaintiff failed to state a claim on which relief may be granted. Second, plaintiff has failed to present any evidence demonstrating that Busch or Williams actually communicated the alleged misrepresentation to plaintiff. Instead, plaintiff relies on the depositions of persons other than himself to demonstrate that an investigation was ongoing or that there was an investigation of plaintiff concerning false charges. In fact, plaintiff's deposition testimony illustrates that the alleged misrepresentations were made to plaintiff by Poplar and not Busch or Williams. Therefore, we conclude that plaintiff's reliance on the alleged misrepresentation was not reasonable in light of the circumstances, as it is not reasonable to rely on the representation, made by a third party, that criminal charges will not be brought against a person if the person pays a bribe to the third party for a prosecutor.

VII

In sum, we conclude that the circuit court erred in denying summary disposition on all claims as to all defendants-appellants.

Reversed and remanded. We do not retain jurisdiction.

**All Citations**

Not Reported in N.W.2d, 2003 WL 22681567

---

End of Document © 2022 Thomson Reuters. No claim to original U.S. Government Works.