FILED

NOV -9 2016

GENESEE COUNTY CLERK
BY
DEPUTY CLERK

## STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF GENESEE

DONNA POPLAR,

    Plaintiff,

-vs-

CITY OF FLINT,

    Defendant.

CASE NO. 14-103842-CD

JUDGE JOSEPH J. FARAH

ORDER REGARDING
DEFENDANT'S MOTION
FOR SUMMARY DISPOSITION

At a session of said Court held in the City of
Flint, County of Genesee, State of Michigan
on the 9th day of November, 2016.

### BACKGROUND

Plaintiff Donna Poplar was appointed to her position as the Director of Human Resources and Labor Relations in 2009 by former Mayor Dayne Walling. She worked in that capacity until the end of 2011, when the City of Flint ("City") faced a $20 million deficit. Governor Snyder then declared a financial emergency and appointed Michael Brown as the Emergency Financial Manager ("EM").

On EM Brown's second day as emergency financial manager in Flint, Friday December 2, 2011, he terminated Plaintiff and six other City employees. Plaintiff was terminated by EM Brown in the presence of City Attorney Pete Bade. All parties agree that at the time of the meeting, there was no direct statements made regarding any age animus.

After Plaintiff was terminated, EM Brown contracted with Gary Bates to serve as an interim director of human resources for 90 days. Bates was, at the time, a 64 year old Caucasian male. There was some discussion relating to the potential of a longer term for Bates' position, but he ultimately served in that capacity for three months, from December 5, 2011 to March 4, 2012. Bates was succeeded by Erycka Hunter. Hunter, a City employee, was at the time the Director of Human Relations. Her division was combined with Human Resources and Labor Relations (those departments formerly administered by Ms. Poplar) to form one department under Hunter's oversight. Many responsibilities related to that position which were previously handled by Plaintiff were subcontracted out.

1

Approximately three months after Plaintiff's termination, Plaintiff spoke to Duane Miller, trying to understand the reasons for her termination. Duane Miller was an advisor to EM Brown and was an executive "on loan" from the Chamber of Commerce for the City. In that conversation, which is at the center of the dispute, Miller allegedly told her that she was removed in order to place younger African American people in high profile positions. It must be noted, however, that Miller denies making this statement.

Since Plaintiff's termination in 2011, she has been unable to secure other employment. As a result what she claims to be clear evidence of age animus, she brought this suit for age discrimination under Michigan's Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq. Defendant answered Plaintiff's complaint and moved the Court for summary disposition, contending that Plaintiff cannot present direct evidence of age discrimination, establish a prima facie case of age discrimination and cannot rebut Defendant's legitimate business purpose in the termination.

The Court heard oral argument from counsel, considered their briefs, and took the motion under advisement pending release of this opinion and order.

## STANDARD OF REVIEW

Pursuant to MCR 2.116 (C)(10) a motion for summary disposition may granted if, except as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law. Because a motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties. All of the proffered evidence is viewed in the light most favorable to the nonmoving party. Where this evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. Rozwood, 461 Mich. at 120 (1999) (citing MCR 2.116(C)(10), (G)(4); Quinto v. Cross & Peters Co., 451 Mich. 358, 547 N.W.2d 314 (1996)).

## ANALYSIS

There are two separate avenues through which Plaintiff seeks to prove her case. Direct evidence and the McDonnell-Douglas v. Green, 411 U.S. 792 (1973) formulation are simply different evidentiary paths by which Plaintiff may seek to prove the Defendant's discriminatory intent. For clarity, the Court will address the two avenues separately.

1. Direct Evidence

2

The first mechanism through which Plaintiff may prove her case involves direct evidence of age discrimination. Direct evidence is evidence which, if believed, "requires the conclusion that unlawful discrimination was at least a motivating factor. With direct evidence, the existence of unlawful discrimination is 'patent.'" Kresnak v. City of Muskegon Heights, 956 F.Supp. 1327 (W.D. Mich. 1997)(citations omitted); Harrison v. Olde Financial Corp., 225 Mich. App. 601 (1997). There is no burden shifting with direct evidence or use of the McDonnell-Douglas framework: only claims based upon indirect or circumstantial evidence require such analysis. DeBrow v. Century 21 Great Lakes, Inc., 453 Mich. 534 (2001).

In this instance, Plaintiff relies upon the statement made by Duane Miller approximately three months after her termination. Plaintiff, in seeking to understand the reasons behind her termination, spoke to Miller via speakerphone with her husband and daughter in attendance. Miller allegedly stated that "We [Duane Miller, Mike Brown, and Woodrow Stanley] want to place young, African Americans in high profile positions" within the City administration. [Plaintiff's Brief, p. 11.] Miller has now disavowed that statement, saying in his deposition that he did not recall making that statement, and that he did not state that Plaintiff was terminated because of her age. [Miller Dep., p. 12]

Plaintiff, not to be undone by Miller's retraction, seeks to admit this statement through her testimony and that of her family members who were present when Miller allegedly made the statement. Defendant argues that the statement is inadmissible hearsay, and cannot be admitted. Plaintiff counters that argument by stating that Miller was an agent of the City, and that it was said within the scope of his employment, and are thus admissible under MRE 801(d)(2).

### a. Agency Relationship

In order for the statement to be admissible, Plaintiff must prevail on both Miller being an agent for the City and the statement being within the scope of his employment. MRE 801(d)(2)(D). The test for a principal-agent relationship is whether the principal has the right to control the agent. Little v. Howard Johnson Co., 183 Mich. App. 675 (1990). Where the agency is dispute, any direct or inferential testimony tending to establish agency creates a question of fact for the jury to determine. Meretta v. Peach, 195 Mich. App. 695 (1992).

There is a disagreement amongst the parties regarding what, precisely, Miller's position within the hierarchy of the City was during the emergency management. Miller was a "loaned executive" from the Chamber of Commerce. He worked out of the mayoral suite, advised the emergency manager relating to public safety and other matters, and he attended core staff meetings at EM Brown's request. Defendant, however, views Miller's position quite differently. Defendant does agree that Miller advised EM Brown on specific matters, but

3

denies that Miller was under the control of EM Brown. Miller's calendar was administered by his Chamber of Commerce staff, he predominantly worked out of the Chamber of Commerce, he did not receive compensation from the City, and he did not consider himself to be an employee of the City.

Between these two narratives is little dispute. Miller was subject to some control by EM Brown through his advisory capacity. An agency relationship need not cover every aspect, but may be limited in scope to specific matters. In this circumstance, the Court is persuaded that Miller's presence in the mayoral suite, his work on the advisory boards, and his participation at weekly staff meetings gives rise to the existence of an agency relationship.

While Plaintiff may have successfully leaped the first hurdle, she may yet fall flat upon the second. Miller may be an agent, but that does not allow any statement made by Miller to come in unfettered. The statement must still be in the scope of his agency.

The testimony of Gary Bates and EM Brown establish that Miller had no control or input over hirings or firings within the workplace. EM Brown testified that he did not receive advice on terminations from Miller, and had not had any conversations with Miller regarding a goal to place younger African American individuals in positions of power. Bates, as the interim head of Human Resources, stated in his deposition that he did not have any contact with Duane Miller relating to any personnel issues, and further, that Bates had no knowledge of him firing, hiring or advising for the termination or hiring of any specific employees. [Bates Dep., p. 104-107]

Because the statement is outside the scope of Miller's agency relationship, it is inadmissible hearsay.[1] Without that statement, Plaintiff has cannot point to any direct evidence of age discrimination.

2. Circumstantial Evidence

Without direct evidence, Plaintiff must use the McDonnell-Douglas framework, which utilizes a burden-shifting standard for analysis. Under this framework, the plaintiff must first establish a prima facie case of age discrimination by showing that she (1) was a member of the protected class of persons; (2) was discharged; (3) was qualified for the position held; and (4) was replaced by a significantly younger person.

It is not disputed by Defendant that Plaintiff was 56 when she was terminated, that she was discharged, and that she was qualified for the position

---

[1] Even if the statement were admissible, the result would not differ. One statement, three months after termination, does not constitute direct evidence of age discrimination. A stray remark by a non-decision maker does not provide sufficient evidence of age animus, even in a light most favorable to Plaintiff. Krohn v. Sedgwick James of Mich., Inc., 244 Mich. App. 289 (2001).

4

she held. The only factor at issue is the fourth element. Defendant challenges Plaintiff's classification of her replacement, arguing that neither Erycka Hunter nor Gary Bates should be considered her replacement as a matter of law.

### a. Prima Facie Case

### A. Gary Bates

Plaintiff challenges the characterization of Bates as her replacement. While there is no doubt that Bates did not serve in any long term capacity, there were clear discussions between Bates and EM Brown relating to whether a new contract would be formed after the end of the initial 90 day contract.[2] While those plans did not come to fruition, there is evidence that this temporary replacement was contemplated to endure for substantially longer than the initial contract contemplated. Yet Bates' actual length of employment is relevant for determining who, if at all, replaced Plaintiff. There is no doubt Bates was not intended to be a permanent replacement for Poplar, as he was previously retired and planned to spend time with his family. Defendant argues that as Bates was intended to remain in his position for longer than the short-term contract, he should be considered Poplar's replacement.

A straightforward application of the facts of Grosjean v. First Energy Corp., 349 F.3d 332 (6th Cir. 2003), defeats Defendant's argument. In Grosjean, after the employer demoted the plaintiff to a non-supervisory position, another supervisor took over the plaintiff's supervisory duties "on a temporary basis," working more than a thousand hours of overtime during a ten-month period before the employer hired someone else to fill plaintiff's position. Id. at 334. The Sixth Circuit held that the plaintiff "was replaced, in both the colloquial and the legal meanings of that term" by the employee eventually hired to fill plaintiff's position. Id. at 336. In this case, while Moss took on Plaintiff's duties in addition to his own duties for a time, he "replaced" Plaintiff because he was eventually reassigned to Plaintiff's position. Plaintiff has made out the prima facie case of discrimination.

Plaintiff cannot prevail if Gary Bates is considered her replacement. Bates was contracted to fill the role immediately after Plaintiff's termination, and served in that capacity for three months. However, Bates was approximately 10 years older than Plaintiff, and thus there can be no evidence of age discrimination. Where Bates is Plaintiff's replacement, summary disposition is appropriate.

### B. Erycka Hunter

---

[2] These discussions are not barred by parol evidence, as they do not impact the unambiguous language of the 90 day contract and do not concern the subject matter of that contract. Even if they were barred by the parol evidence rule, the result would be the same.

5

Plaintiff argues that she was replaced by Erycka Hunter, who was then 30 years old. Defendant does not agree with this assessment, but argues that under this theory, Ms. Hunter was not a replacement. She, as the existing Director of Human Relations, merely took over the responsibilities of the department (and the title), while other duties were subcontracted out. Ms. Hunter was not, according to Defendant, reassigned to the position, but had additional responsibilities delegated to her. A person is only replaced when another employee is hired or reassigned to perform the plaintiff's duties. Grosjean, 349 F.3d 332. There is no dispute, that if Ms. Hunter were the replacement that she qualifies as a significantly younger person. "Age differences of ten or more years have generally been held to be sufficiently substantial to meet the requirement of the fourth part of age discrimination prima facie case." Grosjean, 349 F.3d at 336.

Plaintiff's argument that Erycka Hunter was a replacement is bolstered by the eventual dissolution of the Human Services Commission, which was under the sole supervision of the Human Relations director. Upon the disbandment of the Human Services Commission, the responsibilities of the Human Relations Director became largely obsolete. Additionally, Mr. Jekel was later hired as the Labor Relations Manager in late 2012. He received approximately $31.518 an hour in compensation for that position.

There is a question of fact regarding whether Hunter should be considered Plaintiff's replacement. The removal of the responsibilities of the Human Relations Director, the hiring of additional staff to assist Hunter with her responsibilities, and the short-term nature of Bates' contract create a question of fact on this issue.

### b. Legitimate Business Purpose

Assuming that Hunter is Plaintiff's replacement, Plaintiff has established a prima facie case of age discrimination. After a prima facie case is made out by the plaintiff, the second prong of the presumptive test provides that the burden of production shifts to the defendant, as opposed to the burden of persuasion that never shifts, to articulate some legitimate, nondiscriminatory reason for its actions. Lytle, supra at 186. Assuming that Plaintiff has been able to show a prima facie case, Defendant would have to proffer this legitimate purpose.

Defendant's proffered purpose is thus: due to the $20 million deficit facing the City, it was critical that EM Brown have a team of "trusted individuals" that he could rely upon during the tumultuous period. In order to do so, room must be made within the administration's structure for those individuals. This claim is buttressed by the terminations of five other individuals on the same day of Plaintiff's termination. This purpose, on its face, demonstrates a legitimate business purpose.

### c. Pretext

6

If the defendant meets their burden of production by showing a legitimate business purpose, the third prong of the presumptive test requires that the plaintiff prove by a preponderance of the evidence that the legitimate reason offered by the defendant was a mere pretext. Featherly v. Teledyne Industries, Inc., 194 Mich. App. 352, 358 (1992). A "mere pretext" may be proved (1) by showing that the reason(s) had no basis in fact, (2) if the reason(s) had a basis in fact, by showing that they were not actual factors motivating the decision, or (3) if the reason(s) were motivating factors, by showing that they were jointly insufficient to justify the decision. Dubey v. Stroh Brewery Co., 185 Mich.App. 561, 565–566 (1990). However, the soundness of an employer's business judgment may not be questioned as a means of showing pretext. Id. at 566. Moreover, unfairness will not afford a plaintiff a remedy unless the unfair treatment was because of age discrimination.

Plaintiff disputes that the above proffered purpose is the sole explanation given for Poplar's termination. EM Brown clearly articulated that he had the goal of reducing costs of management salaries while he was emergency financial manager for the City of Flint. [EM Brown Deposition, p. 27] However, EM Brown also stated that this focus did not emerge until several weeks into his position, rather than at the time he made the decision to terminate Plaintiff's employment.

Looking to that additional purpose, Plaintiff argues that terminating Plaintiff resulted in high wages and benefits being paid to Hunter (and then to Mr. Jekel, once he was hired) than Plaintiff received. This may be true. Plaintiff was insured through her husband, which reduced the benefits to be paid on her behalf. Hunter did receive a substantial pay increase while serving as HR/LR/Human Relations Director, and her salary did not change when portions of her job were made redundant. This argument does little to rebut Defendant's purpose. There is no indication that the direct goal of the City was to save money. Instead, EM Brown sought a team of trusted individuals who he believed would assist him in addressing the City's substantial deficit.

The Court is aware that the decisional process by the employer does not need to be optimal. The framework of analysis hinges upon whether the employer made a reasonably informed and considered decision before taking an adverse action. Smith v. Chrysler Corp., 155 F.3d 799 (6th Cir. 1998). However, as Plaintiff does not address Defendant's proffered business purpose, which was that Plaintiff's termination arose from the necessity to have open managerial positions for EM Brown's pre-selected team. It is impossible for Plaintiff to show that the proffered purpose is "unworthy of credence" when no efforts to rebut that purpose. Hopkins v. Midland, 158 Mich. App. 361 (1987).

Plaintiff cannot support a claim of age discrimination under ELCRA with direct evidence. While Plaintiff may be able establish a prima facie case of age discrimination under the McDonnell-Douglas framework, Poplar has failed to rebut

7

Defendant's legitimate business purpose. Accordingly, Defendant's motion for summary disposition is granted.

    IT IS SO ORDERED.

Dated 11/9/18

JOSEPH J. FARAH, Circuit Judge

8