Case 2:21-cv-12568-VAR-JJCG ECF No. 23-28, PageID.790 Filed 11/21/22 Page 1 of 9

ANTHONY BRANCH, Plaintiff-Appellant, V. GENESEE..., Not Reported in N.W....

2022 WL 16858608
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK
COURT RULES BEFORE CITING.

*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*
UNPUBLISHED
Court of Appeals of Michigan.

ANTHONY BRANCH, Plaintiff-Appellant,
v.
GENESEE COUNTY ROAD COMMISSION and MICHIGAN SOCIETY OF ASSOCIATION EXECUTIVES, Defendants-Appellees.

Nos. 358989
|
359634
|
November 10, 2022

Genesee Circuit Court

LC No. 19-113700-CD

Before: GARRETT, P.J., and O'BRIEN and REDFORD, JJ.

**Opinion**

PER CURIAM.

**\*1** These consolidated matters involve plaintiff Anthony Branch's claims against defendants, Genesee County Road Commission (GCRC) and Michigan Society of Association Executives (MSAE), alleging race discrimination in employment under the Elliot-Larsen Civil Rights Act (CRA), MCL 37.2101 *et seq.* In Docket No. 358989, Branch appeals as of right the trial court's order granting summary disposition in favor of GCRC and MSAE under MCR 2.116(C)(10) (no genuine issue of material fact). In Docket No. 359634, Branch appeals as of right the trial court's order awarding MSAE attorney fees and taxable costs as case-evaluation sanctions. We affirm in both dockets.

I. BACKGROUND

This matter stems from allegations by Branch, who is African-American, that he experienced race discrimination when he applied for a manager-director position with the GCRC. The GCRC ultimately appointed Fred Peivandi, an Iranian-American male, as manager director.

Branch began working for the GCRC in 1988 and was promoted to the director of maintenance in 2004. In this role, Branch reported to John Daly, GCRC's manager director. In early 2018, Daly resigned as manager director and recommended that Branch replace him. Branch and Peivandi, then GCRC's director of engineering, were appointed as co-interim manager directors and given raises while the Genesee County Board of Road Commissioners (the Board) began the search process to permanently fill the role. At all relevant times, the Board consisted of (1) Cloyce Dickerson, who is African-American; (2) Shirley Kautman-Jones, who is Caucasian; (3) John Mandelaris, who is Caucasian; (4) David Arceo, who is Mexican-American; and (5) Robert Johnson, who is Caucasian.

The Board hired MSAE to assist GCRC in its search for a new manager director. In April 2018, Cheryl Ronk, MSAE's president at the time, met with the Board to discuss the manager-director position. When Ronk asked the Board members if they wanted certain candidates to automatically receive an interview with the Board, she was told that the Board "wanted all candidates to go through the same process." After discussion of the job description for the manager-director posting, a proposed description was prepared and stated, in relevant part:

**EDUCATION AND EXPERIENCE**

*Possession of a Bachelor's Degree in a field related to job functions is required*. Preference is given towards Civil Engineering and similar disciplines. A Master's Degree will be considered an asset. [Emphasis added.]

Branch reviewed the proposed job description and realized he was disqualified from applying for the manager-director position because he did not have a bachelor's degree. Branch spoke to GCRC Human Resources Director, Donna Poplar, who raised the issue at the next board meeting. The Board ultimately agreed to modify the job description and remove the bachelor's degree requirement to accommodate Branch. The final job posting was altered to reflect:

**EDUCATION OR EXPERIENCE**

*Possession of a Bachelor's Degree in a field related to job functions is desired.* Preference is given towards Civil Engineering and similar disciplines. A Master's Degree will be considered an asset. [Emphasis added.]

***2** Ronk received 95 applications, including from Branch and Peivandi. Ronk decided to interview 15 of the candidates, [1] including Branch and Peivandi, by phone. In June 2018, Ronk interviewed Branch and decided he would not advance to the next round of interviews. One week later, Ronk informed the Board she had "interviewed a number of wonderful candidates" and had narrowed it down to seven candidates for interviews with the Board. The finalists were: (1) Mark Riley, (2) Mary Gillis, (3) Thomas Diener, (4) Peivandi, (5) Curt Carlson, (6) Haithem Aboujrad, and (7) Neil McGinn. All finalists had bachelor's degrees and some combination of a master's degree, engineering experience, and/or a management background. While Dickerson testified it "took [him] by surprise" that Branch had not been selected to interview, Dickerson did not attempt to halt the interview process or motion for Branch to receive an interview. The remaining board members did not expressly question Branch's absence from the list of interviewees.

[1] Although meeting minutes from a June 2018 board meeting state that Ronk interviewed 25 candidates by phone, an e-mail written by Ronk to the Board stated that she identified 15 candidates to interview by phone.

McGinn withdrew his application, and the Board interviewed the six remaining candidates. The Board then narrowed its selection to three candidates for a final interview: (1) Riley, an African-American male; (2) Gillis, a Caucasian female; and (3) Peivandi. Following interviews with these three candidates, the Board unanimously decided to offer Peivandi the position. Riley was the Board's second choice. After Peivandi requested a $5,000 increase in the yearly salary, Ronk reminded the Board that Riley was still a potential candidate for the position. Dickerson questioned why Branch did not interview before the Board. According to meeting notes, Ronk responded that it was her decision. Ronk stated she "did not hear any enthusiasm or energy, [or] passion to be managing director" from Branch during the phone interview. A majority of the board agreed to offer Peivandi the increased yearly salary. Dickerson opposed increasing the salary, but did not oppose Peivandi being appointed manager director. Peivandi accepted the manager-director position. The Board "reappointed" Branch to his previous position as director of maintenance and gave him another raise above what he earned as co-interim manager director.

In September 2018, Branch filed a complaint against GCRC with the Equal Employment Opportunity Commission (EEOC), alleging that he was denied a promotion because of his race in violation of Title VII of the federal Civil Rights Act, 42 USC 2000e *et seq.* The EEOC investigated and ultimately closed Branch's complaint because the EEOC was "unable to conclude that the information obtained establishes violations of the statutes." Branch then filed this lawsuit against GCRC and MSAE, alleging that he was not permitted to interview for the manager-director position because of his race in violation of the CRA. Branch alleged that GCRC "delegated" authority to MSAE, which screened and selected applicants for the manager-director position. GCRC and MSAE filed answers to the complaint and generally denied liability. Discovery commenced.

GCRC and MSAE later moved for summary disposition under MCR 2.116(C)(10), arguing Branch could not establish a prima facie case of discrimination. MSAE specifically argued that Ronk's decision not to select Branch to be one of the seven applicants interviewed by the Board did not constitute an adverse employment action because MSAE did not prevent the Board from interviewing or hiring him. Branch opposed the motions, arguing genuine issues of material fact on his prima facie case of discrimination existed for trial. The trial court heard oral argument on the motions, and the parties argued consistently with their briefs.

Before the trial court issued a decision, the parties participated in case evaluation. The case evaluation panel proposed an award of $20,000 in favor of Branch with respect to his claim against GCRC, and $20,000 in favor of Branch with respect to his claim against MSAE. Branch rejected the proposed awards. GCRC rejected the proposed award, and MSAE accepted the proposed award.

***3** In a September 2021 opinion and order, the trial court granted summary disposition in favor of defendants. As to MSAE, the trial court concluded that Ronk's exclusion of Branch from the list of recommended interviewees was not an adverse employment action because "Ronk did not have the authority to make an ultimate employment decision regarding [Branch]." The trial court noted that the terms of the agreement between GCRC and MSAE expressly provided that GCRC was solely responsible for making the final hiring

Case 2:21-cv-12568-VAR-JJCG ECF No. 23-28, PageID.792 Filed 11/21/22 Page 3 of 9

ANTHONY BRANCH, Plaintiff-Appellant, V. GENESEE..., Not Reported in N.W....

decision. Thus, the trial court held that Branch failed to establish a prima facie case of race discrimination against MSAE and that dismissal of Branch's claim against MSAE was proper. The trial court also found it was proper to dismiss Branch's claim against GCRC because he failed to create a genuine issue of material fact to support an inference of unlawful discrimination. The trial court found "[t]he final group of candidates was ... diverse, including individuals with educational credentials [Branch] simply did not possess." The court noted that although the Board agreed to remove "the educational component as a requirement," "a degreed individual in the Manager-Director position remained a desirable trait to some of the Board members." The trial court also emphasized that "a finalist, and ultimately the second choice for the Board, was an African American male." Therefore, the trial court found that Branch failed to establish a prima facie case of race discrimination against GCRC. The appeal in Docket No. 358989 followed.

In October 2021, MSAE moved for case evaluation sanctions and taxable costs. Branch opposed the motion, arguing that the interest-of-justice exception applied because the case presented "unusual circumstances" and the law was unsettled. The trial court disagreed with Branch and granted MSAE's motion in the amount of $7,673.88. The appeal in Docket No. 359634 followed. This Court consolidated the appeals. [2]

[2] *Branch v Genesee Co Rd Comm*, unpublished order of the Court of Appeals, entered December 28, 2021 (Docket Nos. 358989 and 359634).

II. SUMMARY DISPOSITION

Branch argues the trial court erred by granting summary disposition in favor of MSAE and GCRC.

A. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 229; 964 NW2d 809 (2020). "De novo review means that we review the legal issue independently" and without deference to the trial court. *Wright v Genesee Co*, 504 Mich 410, 417; 934 NW2d 805 (2019).

A motion under MCR 2.116(C)(10) tests the factual support of a plaintiff's claim. Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. [*Zaher v Miotke*, 300 Mich App 132, 139-140; 832 NW2d 266 (2013) (quotations marks and citations omitted).]

The moving party bears the initial burden of production, which may be satisfied "in one of two ways." *Quinto v Cross & Peters Co*, 451 Mich 358, 361; 547 NW2d 314 (1996). "First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim. Second, the moving party may demonstrate to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id*. at 362 (quotation marks and citation omitted). Once the moving party satisfies its burden in one of those two ways, "[t]he burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists." *Id*. In considering a motion for summary disposition, "[t]he trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes." *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013).

B. ANALYSIS

Case 2:21-cv-12568-VAR-JJCG ECF No. 23-28, PageID.793 Filed 11/21/22 Page 4 of 9

ANTHONY BRANCH, Plaintiff-Appellant, V. GENESEE..., Not Reported in N.W....

Branch first argues that the trial court erred by granting summary disposition in favor of MSAE on Branch's claim of race discrimination under the CRA.

The CRA provides that an "employer" shall not "[f]ail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of ... race ...." MCL 37.2202(1)(a). In this case, the undisputed evidence establishes that MSAE was not Branch's employer. Instead, MSAE was hired to assist the Board with finding the appropriate candidate for the vacant manager-director position. Nevertheless, the language of MCL 37.2202 "forbids *any* employer from engaging in acts of discrimination that are prohibited by the CRA" and "appears to clearly envision claims by nonemployees ...." *McClements v Ford Motor Co*, 473 Mich 373, 386; 702 NW2d 166 (2005). While nonemployee claims may be viable, "the language of the statute is also clear in requiring some form of nexus or connection between the employer and the status of the nonemployee." *Id*.

> ***4** In other words, an employer is liable under the CRA when it utilizes a prohibited characteristic in order to adversely affect or control an individual's employment or potential employment. Thus, the key to liability under the CRA is not simply the status of an individual as an "employee"; rather, liability is contingent upon the employer's affecting or controlling that individual's work status. Accordingly, an employer can be held liable under the CRA for discriminatory acts against a nonemployee if the nonemployee can demonstrate that the employer affected or controlled a term, condition, or privilege of the nonemployee's employment. [*Id*. at 386-387.]

Thus, because Branch was a nonemployee of MSAE, the relevant threshold question for Branch's CRA suit against MSAE is whether MSAE "affected or controlled a term, condition, or privilege of [Branch's] employment." See *id*. at 387.

While it is clear the Board could decide who to interview and hire, Ronk provided the Board with a list of initial candidates to interview. Branch was not included on the list. Ronk denied the Board directed her toward any particular candidates or instructed her to grant "courtesy interviews." Rather, Ronk compiled the list herself after conducting preliminary interviews and later noted it was her decision not to recommend Branch to the Board. Importantly, Mandelaris testified: "We relied on [MSAE] to refer to us those applicants that [MSAE] decided were the most qualified. Anthony Branch's name never came up during that period of time." The Board was unaware that Ronk did not select Branch for an interview with the Board until the interview process had commenced, which supports the conclusion that Ronk "affected or controlled a term, condition, or privilege of [Branch's] employment." See *McClements*, 473 Mich at 387.

Branch testified at his deposition that Ronk informed him after his phone interview that he "would not be advancing to the next round" because "the board and the employees wanted to go in another direction." Assuming without deciding that this alleged statement by Ronk is substantively admissible evidence that may be considered when reviewing a (C)(10) motion, see MCR 2.116(G)(6), at most it creates a genuine issue of material fact. Ronk did not recall making such a statement to Branch, and other admissible evidence established that Ronk decided alone that Branch should not advance to the second round of interviews. While Dickerson was surprised to find out at the first round of Board interviews that Branch was not selected, Dickerson thought they were "too far in the process" to offer an interview to Branch. Thus, although the Board still could have chosen to interview Branch for the manager-director position, admissible evidence supports that the Board played no role in Ronk's decision that Branch would not advance to an interview with the Board. When viewing this evidence in a light most favorable to Branch, a question of fact exists as to whether MSAE, through Ronk, affected or controlled Branch's ability to be hired as manager director. See *McClements*, 473 Mich at 387. Accordingly, Branch was not precluded from suing MSAE for race discrimination under the CRA. The question then turns to whether MSAE and GCRC were otherwise entitled to summary disposition on Branch's claims.

As stated earlier, the CRA provides that an "employer" shall not "[f]ail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of ... race ...." MCL 37.2202(1)(a). Branch alleges that MSAE and GCRC violated the CRA by failing to consider him for the manager-director position because of his race.

**\*5** "Proof of discriminatory treatment in violation of the CRA may be established by direct evidence or by indirect or circumstantial evidence." *Sniecinski v Blue Cross & Blue Shield of Mich*, 469 Mich 124, 132; 666 NW2d 186 (2003). Branch did not allege that he had direct evidence of race discrimination. Without direct evidence of discrimination, a plaintiff must instead proceed under the burden-shifting framework of *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973). *Hazle v Ford Motor Co*, 464 Mich 456, 462; 628 NW2d 515 (2001). "The *McDonnell Douglas* approach allows a plaintiff to present a rebuttable prima facie case on the basis of proofs from which a factfinder could *infer* that the plaintiff was the victim of unlawful discrimination." *Id*. (quotation marks and citation omitted). To make this prima facie showing, "a plaintiff must present evidence that (1) [he] belongs to a protected class, (2) [he] suffered an adverse employment action, (3) [he] was qualified for the position, and (4) [his] failure to obtain the position occurred under circumstances giving rise to an inference of unlawful discrimination." *Sniecinski*, 469 Mich at 134. If a plaintiff sufficiently establishes a prima facie case of discrimination, a rebuttable presumption of discrimination exists. *Hazle*, 464 Mich at 464. The burden then shifts to the defendant to "articulate a legitimate, nondiscriminatory reason for its employment decision." *Id*. If a defendant produces the necessary evidence, the burden shifts back to the plaintiff to show that the reason offered by the defendant was pretextual for unlawful discrimination. *Id*. at 465-466.

The trial court granted summary disposition in MSAE's favor on the second element of the prima facie case, concluding that no genuine issue of material fact existed as to whether MSAE took an adverse employment action because "Ronk did not have the authority to make an ultimate employment decision" involving Branch. Branch argues that this was in error because Ronk admitted that it was her decision alone to deny Branch an interview with the Board.

"There is no exhaustive list of what constitutes adverse employment actions." *Chen v Wayne State Univ*, 284 Mich App 172, 201; 771 NW2d 820 (2009). An adverse employment action must be "materially adverse to the employee," akin to "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Id*. at 201-202 (quotation marks and citations omitted). Denial of a promotion may also constitute an adverse employment action. See *Hazle*, 464 Mich at 467. In MSAE's view, however, Ronk's decision to deny Branch an interview was not an adverse employment action because GCRC retained the ultimate authority to interview and hire Branch. Viewing the evidence in the light most favorable to Branch, Ronk's choice not to select Branch for an interview essentially guaranteed that Branch would not receive the manager-director promotion, as the Board deferred to Ronk's initial screening decisions. Under the circumstances of this case, including the fact that Ronk testified that it was her decision to deny Branch an interview, there is a genuine issue of material fact as to whether MSAE, through Ronk, took an adverse employment action against Branch. Thus, the trial court erred by granting summary disposition in MSAE's favor on this basis. Nonetheless, for the reasons discussed below, summary disposition in favor of MSAE was proper. See *Gleason v Dep't of Transp*, 256 Mich App 1, 3; 662 NW2d 822 (2003) ("A trial court's ruling may be upheld on appeal where the right result issued, albeit for the wrong reason.").

The parties do not dispute that Branch is a member of a protected class and that he was qualified for the manager-director position. The remaining dispute rests on the fourth element—whether Ronk's decision not to allow Branch to interview with the Board and the Board's decision to hire Peivandi for the manager-director position give rise to an inference of unlawful discrimination to sustain Branch's claims against GCRC and MSAE. "An employer's differing treatment of employees who were similar to the plaintiff in all relevant respects, except for their race, can give rise to an inference of unlawful discrimination." *Hecht v Nat'l Heritage Academies, Inc*, 499 Mich 586, 608; 886 NW2d 135 (2016). "In order for this type of 'similarly situated' evidence alone to give rise to such an inference, however, our cases

Case 2:21-cv-12568-VAR-JJCG ECF No. 23-28, PageID.795 Filed 11/21/22 Page 6 of 9

ANTHONY BRANCH, Plaintiff-Appellant, V. GENESEE..., Not Reported in N.W....

have held that the 'comparable' employees must be 'nearly identical' to the plaintiff in all relevant respects." *Id*., quoting *Town v Mich Bell Tel Co*, 455 Mich 688, 699-700; 568 NW2d 64 (1997) (opinion by BRICKLEY, J.). Although "a plaintiff is not required to provide evidence that he is at least as qualified as the successful candidate in order to establish a prima facie case under *McDonnell Douglas*," a plaintiff also cannot make out a prima facie case

*6 merely by showing that he was qualified for the position and that a nonminority candidate was chosen instead. While a plaintiff is not required to show circumstances giving rise to an inference of discrimination in any one specific manner, the plaintiff's burden of production remains to present evidence that the employer's actions, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors. In short, a plaintiff must offer evidence showing something more than an isolated decision to reject a minority applicant. As a matter of law, an inference of unlawful discrimination does not arise merely because an employer has chosen between two qualified candidates. Under such a scenario, an equally—if not more—reasonable inference would be that the employer simply selected the candidate that it believed to be most qualified for the position. [*Hazle*, 464 Mich at 470-471 (quotation marks, citations, and footnote omitted).]

In this case, Branch failed to present evidence from which a jury, if unaware of defendants' reasons, could infer unlawful discrimination with respect to the application and interview selection process. The Board at first agreed the manager director must possess a bachelor's degree "in a field related to [the manager director's] job functions." Nonetheless, after a May 2018 meeting, the Board changed the job description by removing the educational requirement so Branch would not be excluded from consideration for the manager-director position. And after seeking advice from Poplar about places to market the job opening, Ronk added two posting locations designed to attract minority candidates.

Ronk received 95 applications, including one from Branch. Using the criteria established by the Board, Ronk decided to interview 15 of the candidates by phone. During a 20-minute phone interview with Branch, Ronk asked Branch multiple questions. In his deposition, Branch denied Ronk did or said "anything during th[e] phone conversation that [he] had with her that led [Branch] to believe that she was biased against African Americans." Branch also acknowledged that Ronk, who worked for an independent company not directly affiliated with GCRC, was a "stranger" to him.

Further, the seven candidates chosen by Ronk for the Board to interview all had higher levels of education than Branch, as well as management experience and/or an engineering background. And of the three finalists, Peivandi had a bachelor's degree and master's degree in civil engineering, Riley had a bachelor's degree and master's degree in business administration, and Gillis had a bachelor's degree in construction engineering and was pursuing a master's degree in public administration. Although the Board removed a bachelor's degree as a *requirement* for the manager-director position, the posting noted that a bachelor's degree remained a desired qualification, and expressed a preference for individuals with a civil engineering background and master's degree. Ronk could consider these educational and experience-based qualifications when screening applicants, and the Board was just as empowered to so when choosing between interviewees. After the final round of interviews, the Board discussed the candidates at length and unanimously decided to offer Peivandi the position, with Riley as the Board's second choice.

Thus, even when taking the evidence in a light most favorable to Branch, the record establishes GCRC changed the job description to ensure Branch could be considered for the manager-director position. Branch does not argue the seven candidates MSAE forwarded to GCRC were not qualified—nor could he—but only that he was more qualified because of his level of experience with GCRC. When it came to experience, however, Branch did not so exceed the selected candidates as to give rise to the inference that MSAE excluded him from the hiring pool based on impermissible factors. While Branch had more years of experience with GCRC than any other candidate, the record reflects that Ronk

Case 2:21-cv-12568-VAR-JJCG ECF No. 23-28, PageID.796 Filed 11/21/22 Page 7 of 9

ANTHONY BRANCH, Plaintiff-Appellant, V. GENESEE..., Not Reported in N.W....

chose individuals who had higher levels of education than Branch and candidates who had management experience. In situations such as this one, where there were multiple qualified candidates, it is equally, if not more reasonable to infer that Ronk selected the candidates she believed to be best qualified for the position of manager director than that she excluded Branch from the candidate pool based on unlawful discrimination. See *Hazle*, 464 Mich at 471.

**\*7** Further undermining any inference of unlawful discrimination is that the fact that Riley, the Board's second choice for the position, is a member of the same protected class as Branch. See *Lytle v Malady*, 458 Mich 153, 184; 579 NW2d 906 (1998) (finding no evidence that gender was a factor in the plaintiff's discharge in part because some of her duties were redistributed to members of the same protected class). Although Branch argues that Riley was only interviewed by the Board to avoid claims of race discrimination, this assertion is speculative, unsupported by evidence, and insufficient to create a genuine issue of material fact. See *McNeill-Marks v Midmichigan Med Ctr-Gratiot*, 316 Mich App 1, 16; 891 NW2d 528 (2016). While Poplar later alleged Riley had been disingenuous about his level of management experience, the undisputed evidence establishes the Board was unaware of this issue until *after* Peivandi was selected to be manager director. The Board ranked Riley as their second choice for manager director, and Peivandi inquired into hiring Riley for a high-level management position, at which point Poplar discovered issues with Riley's resume. Because Riley's resume supports he was qualified for the manager-director position and because the Board considered him to be a qualified and impressive candidate, Branch's allegations that Riley was interviewed solely to conceal the Board's discriminatory intent do not create a genuine issue of material fact. See *Hazle*, 464 Mich at 474-475 (holding "any subsequently discovered shortcomings" in a candidate's application materials "calling into question her qualification" could not "possibly serve as a basis for an inference of unlawful discrimination").

In urging this Court to recognize a genuine issue of material fact, Branch also relies on deposition testimony about general discrimination among the GCRC. For instance, Poplar testified that a discriminatory "mindset" led Ronk and the Board to eliminate Branch from consideration. Poplar and Dickerson testified that Johnson told them that Arceo was a racist, and Branch testified that Daly told him that Arceo does not like African-Americans. Dickerson believed Branch was more qualified than Peivandi and opined that Branch's race played a role in Branch not receiving the manager-director position. These assertions, again, rely on speculation, and are unsupported by admissible evidence. Considering that the Board changed the job description to accommodate Branch, that the final candidates for the manager-director position all had higher educational qualifications than Branch, and that the runner-up selection was another African-American male, the conclusory opinions of discrimination are insufficient to create a genuine issue of material fact. Branch has not set forth a prima facie case from which a reasonable fact-finder could infer that he was denied an interview and promotion because of his race. Viewed in the light most favorable to Branch, the evidence evinces only an "isolated decision to reject a minority applicant." See *Hazle*, 464 Mich at 471. Accordingly, summary disposition in favor of MSAE and GCRC was proper.

### III. CASE-EVALUATION SANCTIONS

In Docket No. 359634, Branch argues that the trial court erred by awarding case-evaluation sanctions to MSAE.

### A. STANDARDS OF REVIEW

"A trial court's decision whether to grant case-evaluation sanctions under MCR 2.403(O) presents a question of law, which this Court reviews de novo." *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008). We review a trial court's decision to invoke the interest-of-justice exception for an abuse of discretion. *Sabbagh v Hamilton Psychological Servs, PLC*, 329 Mich App 324, 364; 941 NW2d 685 (2019). An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes. *Id.* at 355-356.

### B. ANALYSIS

Parties to case evaluation must "file a written acceptance or rejection of the panel's evaluation with the [alternative dispute resolution] clerk within 28 days after service of the panel's evaluation." MCR 2.403(L)(1). "If all the parties accept the panel's evaluation, judgment will be entered in accordance with the evaluation, unless the amount of the award is paid within 28 days after notification of the acceptances, in which

Case 2:21-cv-12568-VAR-JJCG ECF No. 23-28, PageID.797 Filed 11/21/22 Page 8 of 9

ANTHONY BRANCH, Plaintiff-Appellant, V. GENESEE..., Not Reported in N.W....

case the court shall dismiss the action with prejudice." MCR 2.403(M)(1). "If all or part of the evaluation of the case evaluation panel is rejected, the action proceeds to trial in the normal fashion." MCR 2.403(N)(1).

MCR 2.403(O)(1), which was in effect at the time of case evaluation,[3] explained when costs may be assessed for failure to accept a case-evaluation award:

> **\*8** If a party has rejected an evaluation and the action proceeds to verdict, that party must pay the opposing party's actual costs unless the verdict is more favorable to the rejecting party than the case evaluation. However, if the opposing party has also rejected the evaluation, a party is entitled to costs only if the verdict is more favorable to that party than the case evaluation.

The term "verdict" includes "a judgment entered as a result of a ruling on a motion after rejection of the case evaluation." MCR 2.403(O)(2)(c). "[A]ctual costs" include "those costs taxable in any civil action," and "a reasonable attorney fee ... for services necessitated by the rejection of the case evaluation." MCR 2.403(O)(6).

[3] MCR 2.403 was amended in 2022 to omit all of MCR 2.403(O). The trial court granted MSAE's motion for case evaluation sanctions in November 2021, while MCR 2.403(O) remained in effect.

In May 2021, the parties participated in case evaluation. The case-evaluation panel recommended a proposed award of $20,000 in favor of Branch with respect to his claim against MSAE. Branch rejected the proposed award, and MSAE accepted the proposed award. In September 2021, the trial court granted MSAE's motion for summary disposition and dismissed the case. Dismissal of Branch's claim constituted a verdict under MCR 2.403(O)(2)(c) and was clearly less favorable to Branch than receiving $20,000. Thus, MSAE was entitled to case-evaluation sanctions, including reasonable attorney fees and taxable costs. See MCR 2.403(O)(1). The trial court granted MSAE's motion for case-evaluation sanctions and taxable costs.

Branch, however, argues that the trial court abused its discretion by declining to apply the interest-of-justice exception, which would have allowed Branch to avoid otherwise mandatory case-evaluation sanctions. "If the 'verdict' is the result of a motion as provided by subrule (O)(2)(c), the court may, in the interest of justice, refuse to award actual costs." MCR 2.403(O)(11). "The interest-of-justice exception found in MCR 2.403(O)(11) has been interpreted in the context of the analogous offer-of-judgment rule, MCR 2.405(D), because both serve identical purposes of deterring protracted litigation and encouraging settlement." *Sabbagh*, 329 Mich App at 365 (quotation marks, citation, and alteration omitted). In accordance with that application, the interest of justice does not preclude an award of actual costs absent "unusual circumstances." See *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 390; 689 NW2d 145 (2004) (quotation marks and citation omitted). That is, "a grant of fees ... should be the rule rather than the exception." *Id*. (quotation marks and citation omitted).

> Factors such as the reasonableness of the offeree's refusal of the offer, the party's ability to pay, and the fact that the claim was not frivolous are too common to constitute the unusual circumstances encompassed by the interest of justice exception. However, the exception may be applicable when an offer is made in the spirit of gamesmanship ..., rather than a sincere effort at negotiation, or when litigation of the case affects the public interest, such as a case resolving an issue of first impression. [*Id*. (quotation marks and citations omitted).]

While the trial court erred by failing to recognize there was a question of fact as to whether MSAE took an adverse employment action against Branch, the trial court's error does not transform this case into one involving "unusual circumstances," nor does this case present an issue of first impression. Nearly every case presents, in some way, a unique set of facts to apply to the governing law. But here, the relevant law is well settled: *McClements* makes clear that the CRA can apply to nonemployees, and the cases applying the *McDonnell-Douglas* test to CRA discrimination claims

Case 2:21-cv-12568-VAR-JJCG ECF No. 23-28, PageID.798 Filed 11/21/22 Page 9 of 9

ANTHONY BRANCH, Plaintiff-Appellant, V. GENESEE..., Not Reported in N.W....

are commonplace. The circumstances of this case are not "so unusual as to compel" a conclusion that the trial court's refusal to invoke the interest-of-justice exception was an unreasonable outcome. See 🚩*Haliw v Sterling Hts (On Remand),* 266 Mich App 444, 450; 702 NW2d 637 (2005). Thus, the trial court did not abuse its discretion by declining to apply the interest-of-justice exception and by awarding case-evaluation sanctions to MSAE.

IV. CONCLUSION

**\*9** In Docket No. 358989, we affirm the trial court's order granting summary disposition in favor of MSAE and GCRC. In Docket No. 359634, we affirm the trial court's order awarding case-evaluation sanctions to MSAE.

Kristina Robinson Garrett

Colleen A. O'Brien

James Robert Redford

**All Citations**

Not Reported in N.W. Rptr., 2022 WL 16858608

**End of Document** © 2022 Thomson Reuters. No claim to original U.S. Government Works.