## Disciplinary Action Notice

TO: Donna Poplar, Director of HR
FROM: Fred Peivandi, Managing Director
DATE: August 19, 2021

This memorandum concerns your employment and your conduct with respect to the GCRC's COVID-19 response policies. In the early morning of August 16, 2021, I forwarded you an email enclosing a memorandum promulgated by MCRCSIP discussing MIOSHA's recent encouragement of the newly revised CDC guidance concerning indoor mask usage. In this email, MCRCSIP advised its Road Commission members (including the GCRC) that the CDC guidance did not represent a mandate, but that each Commission should review the guidance and consider it advisory when establishing policies responsive to COVID-19. Approximately one hour after I forwarded this email to you, you emailed me and recommended that the GCRC modify its current COVID-19 response policy to mandatorily require both vaccinated and unvaccinated GCRC employees and visitors to wear face masks while on our premises.

I appreciated that you provided me with your perspective on the issue. After considering your recommendation and reviewing the guidance as recommended by MCRCSIP, I wrote you an email response that afternoon which read:

> Donna,
>
> At this time, I do not wish to mandate that GCRC staff and visitors wear masks, but I do want staff to be aware of the risk level in Genesee County so that they can make their own personal protection decision. If at a later time MIOSHA issues a mandate, GCRC will need to comply with the guidance of requiring all staff and visitors to wear masks. It is a good time to remind staff about social distancing, hand washing, and the availability of masks and hand sanitizer.

I intended this email to communicate to you my reasoned and ultimate directive concerning the GCRC's COVID-19 response policy, to remain effective until new facts, legal requirements, or persuasive guidance necessitated changing course.

At 5:26 PM that same day, you responded to my directive by reiterating your concerns and repeating your recommendation that the GCRC implement indoor mask-wearing requirements for vaccinated and unvaccinated employees and visitors. Although you acknowledged that, as the Managing Director, I had "the final say on how I wanted to safeguard the safety of GCRC employees and visitors against the COVID-19 deadly Delta variant," you also informed me you "believed that you and I have a duty to discuss the MIOSHA recommendation and the CDC Guidelines concerning this serious matter with the GCRC Board." I disagree with your position

concerning the necessity of elevating this conversation to the Board before the public, as I had prior communicated to you my "final say" with respect to this extremely serious, highly contentious, and politically-charged health and safety issue.

Following the adjournment of our next regularly scheduled GCRC Board of Commissioners meeting (which began on the following day, August 17, at 10:00 AM), you continued to advocate before the Board in support of your position concerning this issue and in spite of my clear, unambiguous, and final decision to implement a COVID-19 response policy which was partially at odds with your preferred response strategy. You even asked a Genesee County Commissioner, who had attended the active session of the meeting, to support your position before our Board. This conduct mirrored several historical examples when you had asked the Board to intervene and overturn strategic decisions I made for the GCRC within the scope of my authority.

More significantly, however, you distributed on August 17 a memorandum to all GCRC employees entitled "MIOSHA Recommendations." I am listed as one of two authors of the document, along with you. But despite your attribution of this memorandum to me, you never submitted this document to me for my review or approval prior to disseminating it to all GCRC employees.

Had you provided me with an opportunity to review this memorandum prior to its promulgation, I would not have approved it. A thorough, responsible, and informative memorandum would have simply informed our employees and our Board about the increasing rate of COVID-19 transmissibility in Genesee County, briefly summarized the CDC's latest recommendations, and reiterated that the GCRC would not be changing our mask-wearing policies at this time. Instead, your memorandum irrelevantly identified me personally as the individual who declined to mandate mask usage, before (baselessly) stating that I would not revise these policies absent the imposition of a mandate requiring employees and visitors to wear masks indoors as issued by the State of Michigan. A reasonable interpretation of this memorandum was that you included these details with the intent to cast doubt upon the soundness of the GCRC's COVID-19 response policy and to connect me personally to that strategic decision; it was, for example, significant to me that the memorandum concluded by reminding employees harboring concerns that they might raise them with their "union representatives."

In light of your clear and evident disagreement with my decision regarding this matter and after considering numerous historical examples whereby you have attempted to undermine my strategic directives, I have come to the conclusion that I have no choice but to remedy this situation with disciplinary action. Specifically, I have elected to impose disciplinary action for the following reasons:

1. <u>Insubordinate Failure to Follow Directives</u>. On July 1, 2021, I issued you specific directives with respect to our professional relationship and the exercise of your duties and your authority within the GCRC. You have violated these directives in two ways, each of which constitute insubordination with respect to these directives:
    a. Directive Three requires you to "perform tasks as directed or assigned by the Managing Director." After you privately raised your concerns to me regarding the

MIOSHA recommendation, I considered your input but ultimately decided to decline to require vaccinated employees and individuals at this time. Instead of rendering material assistance to implement this directive, you continued to reiterate your concerns after I announced my ultimate decision, and you then brought the matter to the attention of the Board in hopes of reversing my decision. I consider your conduct leading up to the issuance of the memorandum to constitute a failure to adhere to the requirements of Directive Three.

b. Directive One requires you "raise privately with me any concerns or criticisms you may harbor about work-related matters" with respect to "policies, procedures, or initiatives I may wish to implement." Although you partially complied with these directives by privately (and responsibly) raising your concerns about the transmissibility of the Delta COVID-19 variant with me, you elevated your concerns to the Board even after I had rendered a final decision. More importantly, however, your memorandum impliedly communicates your disagreement with my decision by irrelevantly identifying me as the decisionmaker with respect to the GCRC's COVID-19 policy and its current mask-wearing requirements for employees and visitors. In context of the whole of the memorandum, I consider your decision to specifically name me in your memorandum to violate the requirements of Directive One.

2. <u>Misrepresentation of Authorship of the August 17 Memorandum</u>. Your August 17 memorandum purported was authored by two individuals – you and me. You represented to our employees that I authored this document even though you never provided it to me for my review, and even though you misrepresented my opinion within the memorandum with respect to those conditions upon which I would consider revising our mask-wearing requirements moving forward. In so doing, you misrepresented my involvement in the promulgation of your memorandum, which represents an ultra vires exercise of the authority of your position as Director of Human Resources.

After reviewing this memorandum several times and carefully weighing its contents against my concerns, I have decided to impose a temporary, disciplinary suspension upon your employment for those specific reasons identified above. Your suspension will begin effective Monday, August 23 and to continue for two weeks. You may resume your duties on Monday, September 6.

I hope we can continue efforts to rebuild our professional relationship after you return from your suspension. To the extent you have questions about this notice, please reduce these questions to writing and send them to me.

Sincerely,

Fred Peivandi
Managing Director