UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

DONNA POPLAR,

 *Plaintiff,*

v.

GENESEE COUNTY ROAD
COMMISSION and FRED F.
PEIVANDI, in his individual
Capacity,

 *Defendants.*

CASE No.: 4:21-cv-12568

HON. VICTORIA A. ROBERTS

---

| | |
|---|---|
| CHARIS LEE (P84127) | ANDREW A. CASCINI (P76640) |
| LEE LEGAL GROUP, PLLC | HENN LESPERANCE PLC |
| Attorney for Plaintiff | Attorney for Defendants |
| 117 W. Flint Park Blvd. | 32 Market Ave., SW, Suite 400 |
| Flint, MI  48505 | Grand Rapids, MI  49503 |
| (810) 513-9257 | (616) 551-1611 |
| charis@leebusinesslaw.com | aac@hennlesperance.com |

JULIE A. GAFKAY (P53680)
GAFKAY LAW, PLC
Co-Counsel for Plaintiff
604-A S. Jefferson Ave.
Saginaw, MI 48607
(989) 652-9240
jgafkay@gafkaylaw.com

---

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT PURSUANT TO FRCP 56

NOW COMES Plaintiff, Donna Poplar, by and through her attorneys, LEE LEGAL GROUP, PLLC and GAFKAY LAW, PLC, and hereby opposes Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. As set forth more fully in the accompanying brief, there are genuine disputes of material fact supported by the record evidence.

Plaintiff admits Concurrence was sought by Defendants, but denied, by Plaintiff on November 16, 2022.

WHEREFORE, Plaintiff, Donna Poplar, respectfully requests that this Honorable Court deny Defendants' Motion for Summary Judgment.

Respectfully submitted,

**Lee Legal Group, PLLC**

Dated: <u>1/23/2023</u>

<u>s/Charis Lee</u>
CHARIS LEE
State Bar No. P84127
LEE LEGAL GROUP, PLLC
117 W. Flint Park Blvd.
Flint, MI, 48505
810-513-9257
Charis@leebusinesslaw.com

GAFKAY LAW, PLC

<u>s/Julie A. Gafkay</u>
Julie A. Gafkay (P53680)
Co-Counsel for Plaintiff

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONNA POPLAR,

     *Plaintiff,*

v.

                                  CASE No.: 4:21-cv-12568

GENESEE COUNTY ROAD
COMMISSION and FRED F.               HON. VICTORIA A. ROBERTS
PEIVANDI, in his individual
Capacity,

     *Defendants.*

| | |
|---|---|
| CHARIS LEE (P84127) | ANDREW A. CASCINI (P76640) |
| LEE LEGAL GROUP, PLLC | HENN LESPERANCE PLC |
| Attorney for Plaintiff | Attorney for Defendants |
| 117 W. Flint Park Blvd. | 32 Market Ave., SW, Suite 400 |
| Flint, MI  48505 | Grand Rapids, MI  49503 |
| (810) 513-9257 | (616) 551-1611 |
| charis@leebusinesslaw.com | aac@hennlesperance.com |

JULIE A. GAFKAY (P53680)
GAFKAY LAW, PLC
Co-Counsel for Plaintiff
604-A S. Jefferson Ave.
Saginaw, MI 48607
(989) 652-9240
jgafkay@gafkaylaw.com

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT FRCP 56**

# TABLE OF CONTENTS

**STATEMENT OF ISSUES PRESENTED** ............................................................ii

**STATEMENT OF MOST CONTROLLING AUTHORITY** ............................iv

**INDEX OF AUTHORITIES** ..........................................................................i

**RESPONSE TO DEFENDANTS' STATEMENT OF FACTS** ...................... 1

**ARGUMENT** ................................................................................................ 12

  **A. Plaintiff Exhausted her Administrative Remedies for her Title VII Race and Retaliation Claims.** ......................................................................... 13

  **B. Plaintiff's Race Discrimination Claims Should Not be Dismissed.** .......... 15

  **C. Defendants are Not Entitled to Summary Judgment on Plaintiff's Retaliation Claims.** ...................................................................................... 17

  **D. Defendants are not entitled to Summary Judgment on Plaintiff's Failure to Accommodate Claim under PWDCRA.** .................................................. 21

  **E. Plaintiff's Speech regarding Defendant Peivandi's Violations of Health Regulations is Protected Speech.** ................................................................ 23

**CONCLUSION** ............................................................................................. 25

## STATEMENT OF ISSUES PRESENTED

I.  Has Plaintiff failed to exhaust her administrative remedies with respect to certain claims she brings under Title VII, entitling Defendants to judgment as a matter of law upon those claims?
Plaintiff answers:  No

II.  Can Plaintiff establish a prima facie case of race discrimination or retaliation based on the undisputed facts in the record?
Plaintiff answers:  Yes.

III.  Have Defendants set forth legitimate, non-discriminatory and non-retaliatory reasons for all purportedly adverse actions taken against Plaintiff in this case?
Plaintiff answers:  No.

IV.  Can Plaintiff establish a showing that the Defendants were motivated by pretext to discriminate against Plaintiff because of her race and protected activity?
Plaintiff answers: Yes.

V.  Have Defendants failed to reasonably accommodate the Plaintiff's visual disability under those standards required by Michigan's PWDCRA?
Plaintiff answers:  Yes.

VI.  Has Defendant Fred Peivandi retaliated against Plaintiff for her protected speech in violation of the First Amendment of the United States Constitution?
Plaintiff answers:  Yes.

VII.  Whether There is a Genuine Issue of Material Fact of Intentional Race Discrimination?
Plaintiff answers Yes.

VIII.  Whether there is a Genuine Issue of Material Fact that Plaintiff Suffered an Adverse Employment Action for Purposes of her Title VII and Elliott-Larsen Civil Rights Claims?
Plaintiff answers Yes.

## STATEMENT OF MOST CONTROLLING AUTHORITY

Rules

Fed.R.Civ.P. 56..................................................................................................... 12

## INDEX OF AUTHORITIES

**Cases**

*Abeita v. TransAmerica Mailings, Inc*., 159 F.3d 246 (6th Cir. 1998) ..................14

*Aho v. Dept. of Corrections*, 263 Mich. App. 281, 688 N.W.2d 104 (Mich. Ct. App. 2004) ...........................................................................................................18

*Ang v. Procter & Gamble Co*., 932 F.2d 540 (6th Cir. 1991) ...............................14

*Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888 (6th Cir. 2003) .........................24

*Barrett v. Kirtland Community College*, 245 Mich. App. 306, 628 N.W.2d 63 (2001). .................................................................................................................19

*Barrett v. Whirlpool Corp.*, 556 F.3d 502 (6th Cir. 2009)) ....................................18

*City of San Diego v. Roe*, 543 U.S. 77, 125 S. Ct. 521, 160 L.Ed.2d 410 (2004)...24

*Clay v. Mich. Dep't of Corr.*, No. 2:21-cv-11880, 2022 U.S. Dist. LEXIS 140552, at *11-12 (E.D. Mich. Aug. 8, 2022)..................................................................25

*Harrison v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.,* 80 F.3d 1107 (6th Cir. 1996); ........................................................................................................19

*Hazle v. Ford Motor Co.*, 464 Mich. 456 (2001).................................................18

*Johnson v. Cleveland City Sch. Dist.*, 344 F. App'x 104 (6th Cir. 2009)................18

*Kiessel v. Oltersdorf*, 459 F. App'x 510 (6th Cir. 2012) ......................................24

*Lybager v. Gates*, 2012 WL 1095915 at *8 (N.D. Ohio Mar. 30, 2012) ...............14

*Marohnic v. Walker*, 800 F.2d 613 (6th Cir. 1986)..............................................24

*McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973). ...................................15

*Newton v. Ohio Dep't of Rehab. And Corr. – Toledo Corr. Inst.,* 496 Fed.Appx. 558 (6th Cir. 2012)............................................................................................19

*Nguyen v. City of Cleveland*, 229 F.3d 559 (6th Cir. 2000) ..................................19

*Petzold v. Borman's Inc*., 241 Mich. App. 707, 617 N.W.2d 394 (2000)...............22

*Rankin v. McPherson*, 483 U.S. 378, 383, 107 S. Ct. 2891, 97 L.Ed.2d 315 (1987). ..........................................................................................................................24

*Rennie v. Garrett*, 896 F.2d 1057 (7th Cir. 1990)................................................14

*Silberstein v. Pro-Golf of Am., Inc*., 278 Mich. App. 446, 750 N.W.2d 615 (2008) ..........................................................................................................................19

*Sniecinski v. Blue Cross & Blue Shield of Michigan,* 469 Mich. 124 (2003). ........18

Spees v. James Marine, Inc., 617 F.3d 380, 391 6th 2010)....................................15

*Walker v. Burkes*, No. 2:15-CV-3058, 2017 U.S. Dist. LEXIS 145685, 2017 WL 3962627, at *5 (S.D. Ohio Sept. 8, 2017).........................................................24

*White v. Burlington N. & Santa Fe Ry. Co.,* 364 F.3d 789 ((6th Cir. 2004) (en banc)) ................................................................................................................ 15

i

Statutes

MICH. COMP. LAWS § 37.1210(18) ........................................................................ 22

Rules

Fed.R.Civ.P. 56 ...................................................................................................... 12

## <u>RESPONSE TO DEFENDANTS' STATEMENT OF FACTS</u>

Plaintiff admits Defendants' paragraphs 1-2, 4-5, 7, 10-17, 19, and 26-28, 29, 32, 39, 40, 45, 50.

3. Plaintiff disputes the managing director has sole authority to hire, fire, and discipline employees. These are shared functions with Human Resources (ECF No. 30-54, PageID.2293; **Ex. 1**).

6. Plaintiff admits she executed three employment agreements with GCRC. Plaintiff denies they were executed within the first few months of her employment and Plaintiff also signed the contract (ECF No. 30-24, PageID.2199, ECF No. 30-25, PageID.2202, ECF No. 30-27, PageID.2209). Plaintiff also denies the managing director needs "authorization" from the board to execute an employment agreement; prior knowledge or approval by the GCRC Board for an employment agreement is acceptable; (**Ex. 2**, Mandelaris-1, pp. 77-78)

8.  Plaintiff denies she was terminated from GCCAA for cause. (**Ex.3**, Poplar-1, p. 16) Plaintiff admits termination from the city of Flint in 2011 by the then-incoming emergency manager who terminated several appointees of Mayor Dayne Walling. (*Id.* 10-12).

9.  Plaintiff denies her expunged record is the reason for her termination at GCCAA. (**Ex. 4**).

18.  Plaintiff denies John Daly did not receive other complaints. Kimberly Day ("Kim Day") complained of race discrimination to Daly against Defendant Peivandi. (**Ex. 5**, Daly-1, pp. 31, 17-18).

20. Plaintiff admits she recorded a conversation she was a party to with Defendant Peivandi and he said, "In real life—okay—If I own a company, just between you and I, all right, who would you hire? Would you hire somebody who can—you're not going to hire somebody that's going to take one and a half persons to do the job or two people to do the job" ECF No. 30-32, PageID.2227.

21.  Plaintiff denies. In December 2018 Plaintiff asked Defendant Peivandi to approve Plaintiff's request for a budget transfer for the hiring of a part-time HR administrative position (ECF No. 30-34, PageID.2232) GCRC, not that Plaintiff disagreed with the pay rate. ECF No. 30-35, PageID.2233.

22. Plaintiff denies. It was recorded in board minutes that Plaintiff specifically stated she was not going against Defendant Peivandi's recommendation, but seeking clarity from the Board *Id*.

23.  Plaintiff denies the right to sue letter she received on August 5th, 2021 was issued for the February 4, 2019 EEOC charge filed against the GCRC; the August 5, 2021 right to sue was for a subsequent EEOC charge against GCRC filed on May 10, 2021. ECF No. 30-52, PageID.2285.

24. Plaintiff denies the timeframe of "three months later" as it is not clear what

"three months" Defendants are referring to.

25.  Plaintiff admits her deposition was taken on September 22, 2020 and October 8, 2020 in the Branch lawsuit (ECF No. 30-4, PageID.2042).

29.  Plaintiff admits and clarifies Defendant Peivandi subjected her to harrassment, intimidation, retaliation, deferential treatment, and race discrimination that began in "early 2018." ECF No. 30-18, PageID.2165.

30. The Board voted unanimously for MCRCSIP to investigate the complaint, not Lange (ECF No. 30-41, PageID.2256).

31. Plaintiff admits Lange represented he reviewed thousands of documents, investigated for two months, and interviewed thirteen GCRC employees, however, Plaintiff denies she admitted these statements. (ECF No. 30-7, PageID.2063). Plaintiff questions whether Lange actually performed a thorough investigation based on his report.

33.  Plaintiff admits Lange released his report to MCRCSIP on April 26, 2021. (ECF No. 30-14, PageID.2127). The report is addressed to MCRCSIP's administrator Gayle Cummings, not to the Board (*Id.*)

34.  Plaintiff clarifies and admits Commissioner Tim Elkins gave Plaintiff a letter from Lange that was addressed to Plaintiff's home address. Dickerson was there but did not have knowledge of the letter. (**Ex. 3**, Poplar-1, p. 218).

35. Plaintiff admits Defendant Peivandi provided a summary of Lange's

3

investigative report along with directives he instructed her to follow in response to

her January 28, 2021 complaint filed with the GCRC board against him (ECF No.

30-44, PageID.2263).

36. Plaintiff denies the summary of Peivandi's testimony. Peivandi stated, "What

she did, this complaint again. I mean, she filed a complaint in January, and I give

her a directive so we can maybe fix our working relationship, to let her know who

the boss is in this organization..."  (**Ex. 6**, Peivandi 44, 130-131).

37. Plaintiff admits on August 16, 2021, she emailed Peivandi and recommended

the GCRC follow the recommendations of MIOSHA, CDC guidelines, and

Genesee County Health Department to reimpose masking requirements. ECF No.

30-45, PageID.2267.

38. Plaintiff denies she did not follow Defendant Peivandi's directives, and she

admits she disagreed with Defendant Peivandi's violation of health regulations

relating to the mask mandate. *Id.*

39. Plaintiff admits she sent out a memorandum entitled "MIOSHA

Recommendations" pursuant to her job duties as HR Director. Plaintiff denies

admitting that this memorandum is and contains all "speech" upon which her First

Amendment retaliation claim relies. (**Ex. 3**, Poplar-1, p. 250).

41. Plaintiff admits she filed a second complaint with the Board on August 26,

2021 *inter alia*, alleging discrimination, harassment, and retaliation from Peivandi (CF No. 30-18, PageID.2165) and asked for "an unbiased investigation".  Plaintiff denies she baselessly suggested "[t]ampering" occurred with Lange's investigation. Plaintiff admits the Board "grossly failed to protect" her from Peivandi's actions. *Id*.

42. Plaintiff denies. Peivandi issued Plaintiff a Notice of Administrative Leave on September 6, 2021, which was Labor Day. Plaintiff asks the Court to take judicial notice the holiday was observed by GCRC.

43. Plaintiff denies. Defendant Peivandi testified that he placed Poplar on paid administrative leave for the following reasons: (1) Peivandi wanted to know how to handle this case (2) Peivandi needed a "cooling off period between me and her;" (3) so that Peivandi had time to deal with this complaint (4) "So our board can have time to decide how to deal with this other complaint that came into them" and (5) to allow the Board an opportunity to investigate if they wished (**Ex. 6**, Peivandi 128-129, 130- 133).

44. Plaintiff admits there was a letter on said date, but denies the purpose was to "hold settlement discussions," instead the letter requested to "mediate Plaintiff's concerns". ECF No. 30-49, PageID.2276.

46. Plaintiff admits the parties negotiated, but reached impasse in October, 2021. The right to sue 90-day deadline was November 2, 2022 (ECF No. 30-52, PageID.2285).

47. Plaintiff admits the Board voted to return Plaintiff to work on November 2, 2021; but not prior to the Board being aware of impasse, Plaintiff's intent to file, and pacer complaint caption being generated.

48. Plaintiff denies the Benefit Coordinator job description was modified to require Monica Pearson to continue helping Plaintiff. (**Ex. 7,** Pearson p. 14, 15,18,19, 38, 39, 40).

49. Plaintiff denies, the entire team was senior, and Pearson, in her role as Administrative Assistant, had been intentionally cross trained as a back-up and potential replacement to all HR staff positions. *Id.* at 32.

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS

51. Plaintiff earned a Master of Science Administration with a concentration in HR in 1987 from Central Michigan University (**Ex. 3**, Poplar-1, p. 9).

52. Under Plaintiff's leadership as the HR Director, she initiated numerous costs saving initiatives resulting in more than $300,000 in yearly savings, to the Defendants' Operation (**Ex. 9**).

53. GCRC was aware of a race discrimination no later than 2012 when Kim Day

reported a complaint of Race Discrimination to Daly against Defendant Peivandi (**Ex. 5**, Daly, p. 31; **Ex. 10**, Dickerson, pp. 14,15).

54. Defendants' subsequently outsourced Day's department (**Ex. 10**, Dickerson, pp. 14-15).

55. Chair Dickerson stated Defendant Peivandi has discriminated against Plaintiff by failing to follow policies and procedures; disciplined more harshly by not using progressive steps. (**Ex. 10**, Dickerson, pp. 19, 20).

56. Chair Dickerson also believed Plaintiff's complaint wasn't fairly or fully investigated by Lange because Dickerson was the only African-American interviewed (**Ex. 10**, Dickerson, p. 21).

57. Plaintiff's complaints on January 28, 2021 and August 26, 2021complied with the complaint policy which _required_ complaints against the Managing Director be reported to the board (**Ex. 11**).

58. After receiving Lange's summary letter on or about June 27, 2021; a month after it was written; on July, 1, 2021, Defendant Peivandi sent Plaintiff an email in response to Plaintiff's January 28, 2021 complaint against him included five directives to Plaintiff (ECF No. 30-44, PageID.2263).

59. The directives to Plaintiff silenced Plaintiff; prohibited contact with GCRC Board regarding without concerns without first addressing speaking with Peivandi; to include him in any work-related communications to the individual board

members or full board; perform tasks as directed; defer all decisions for hiring and firing to the managing director; and respect and implement his budget recommendations. *Id.*

60. Directive three states, "Your *employment contract* states that you, "**shall** work under the direction of" the Managing Director… *Id.*

61. Plaintiff reported to Defendant Peivandi MIOSHA recommended all vaccinated and unvaccinated employees and visitors to wear a face mask to contain the spread of COVID-19 and On August 4, 2021, Genesee County Health Department issued a directive calling for county buildings to have a mask policy (ECF No. 30-45, PageID.2267).

62. Plaintiff recommended Defendant Peivandi follow MIOSHA, CDC, and Genesee County Health Department guidance and require all GCRC employees and visitors to wear a face mask. (ECF No. 30-45, PageID.2268).

63. Defendant Peivandi declined to follow the MIOSHA, CDC, and Genesee County Health Department recommendation, but indicated Plaintiff could advise staff of the risk levels in Genesee County. Plaintiff indicated to Defendant Peivandi she would have her assistant Monica send a memo to inform staff. (ECF No. 30-45, PageID.2267).

64. Subsequently, on August 19, 2021, Plaintiff was placed on an unpaid two-week

disciplinary suspension based on alleged insubordination relating to her memo to staff and not following Defendant Peivandi's July 1, 2021 directives. (ECF No. 30-47, PageID.2272).

65. Plaintiff filed her August 26, 2021 complaint regarding her unmerited suspension inter alia and it was never investigated in violation of the Complaint Policy (**Ex. 6**, Peivandi 131; **Ex. 10**, Dickerson, p. 26-28 **Ex. 11**).

66. Defendant Commissioners "didn't do anything" in response to Plaintiff's complaint against the managing director (**Ex. 10**, Dickerson, p.28).

67. Plaintiff was immediately placed on administrative leave beginning on September 7, 2021 by Defendant Peivandi when he found out about her complaint against him (ECF No. 30-48, PageID.2275).

68. Then-Vice Chair of the GCRC, John Mandelaris ("Defendant Commissioner Mandelaris") admitted that Plaintiff needed to be accommodated, and there was no burden to accommodate Plaintiff with any of her requested accommodations (Ex 2, Dep of Mandelaris, p. 17-18).

69. The GCRC board voted an assistant as an accommodation for Plaintiff and had not voted for it to be removed. (Ex 2, Mandelaris, p. 17-20).

70. Vice Chair Mandelaris recounted that he did not believe Plaintiff had been treated fairly during her tenure at the GCRC. (**Ex. 2**, Mandelaris, p. 16, 24).

71. Plaintiff was not told when she would be called back to work, if ever, at the

time and she was denied access, physically and remotely to GCRC and told she could not enter the property, but for a public meeting. (ECF No. 30-48, PageID.2275; **Ex. 6**, Peivandi, p. 130, 131).

72. Defendants reinstated Plaintiff to her position with GCRC and did not remove her unpaid suspension, yet notated she had not done anything wrong (ECF No. 30-51, PageID.2282).

73. Peivandi did not originally provide Plaintiff's accommodation until the board forced him to do so (**Ex.10**, Dickerson p. 8-9; **Ex.2,** Mandelaris p.18).

74. Defendants refused to allow Plaintiff to post the position for the HR assistant position that was already budgeted and approved for 2022 (**Ex.6**, Peivandi, p. 63).

75. Plaintiff sent emails and had numerous conversations with Dellaposta to attempt to fill the position (**Ex.13**; **Ex. 8** Dellaposta p. 20, 26, 27).

76. Dellaposta admitted that the position was not filled due to Defendant Peivandi's wishes (**Ex. 8**, Dellaposta, p. 27, 28).

77. Fred Peivandi intentionally removed the accommodation because he was "the boss" and because he believed he had authority to do so (**Ex.6**, Peivandi p. 63,77,78,130,131).

78. Plaintiff and Anthony Branch who have engaged in protected activity received

a 1% raise and 2% raise for the 2021-2022 budget passed by Defendant in September, 2021. Three Caucasian directors who have not engaged in protected activity received higher raises (**Ex. 14**).

79. Defendant's understood that as Director of HR, it was Plaintiff's role to handle employment issues in the organization (**Ex. 6**, Peivandi p. 28, 29; **Ex.16**).

80. Dellaposta does not deny that he asked Plaintiff why she wasn't in attendance of some meetings that involved HR matters. (**Ex. 8**, Dellaposta, p. 15, 21-24).

81. Defendant Peivandi continued to eliminate Plaintiff from meetings which involves Plaintiff's dept. (**Ex.3**, Poplar-1, p. 201; **Ex. 6**, Peivandi p. 144, 145).

82. Plaintiff was removed as the HR Division head after returning from administrative leave and her co-worker Tracy Kahn ("Caucasian, Woman") was placed over HR. *Id.*

83. Defendant Peivandi shared it was his recommendation to the GCRC board that HR and Finance be combined (**Ex.6**, Peivandi, p. 56-60).

84. Plaintiff had previously raised concern to the Board about Defendant Peivandi giving her work assignments to Tracy Kahn (**Ex. 15**).

85. Defendant Peivandi denied Plaintiff's request to present a PowerPoint presentation to the board on the HR state of affairs (**Ex.6**, Peivandi, p. 36).

86. Dellaposta was allowed to present to Road to bridges where the GCRC board is typically present (**Ex.6**, Peivandi, p. 37).

87. Prior to her complaints, Plaintiff reported directly to the Managing Director. Plaintiff now reports up to Defendant Peivandi through two colleagues, even though it is a violation of her employment contract. *Id.*

88. Plaintiff was threatened with termination if she continued to investigate a race discrimination claim filed with her in accordance with the GCRC Complaint Procedure (**Ex.16**); (**Ex. 11**).

## **ARGUMENT**

Plaintiff has filed an eight-count complaint alleging: (1) violations of Title VII against Defendant GCRC; (2) race discrimination in violation of ELCRA against Defendants; (3) retaliation in violation of Title VII against Defendant GCRC; (4) retaliation in violation of ELCRA against Defendants; (5) violations of Section 1981 for intentional discrimination and retaliation; (6) 1983 speech first amendment retaliation claim against Defendant Peivandi, in his individual capacity; (7) failure to accommodate pursuant to PWDCRA; and (8) PWDCRA retaliation. ECF No. 10, Plaintiff's First Amended Complaint, PageID.59-67. Contrary to Defendants' assertion, there are genuine disputes of material fact supported by the record evidence, including depositions, documents, and other materials; Plaintiff does not solely rely on her claims through her own deposition testimony, although her testimony is relevant. Accordingly, for the reasons set forth more fully below,

Defendants' Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56 should be denied.

### A. Plaintiff Exhausted her Administrative Remedies for her Title VII Race and Retaliation Claims.

On May 10, 2021, Plaintiff filed an EEOC charge of discrimination for race and retaliation, and also alleged the discrimination was a "continuing action". ECF No. 30-16, PageID.2160. On August 5, 2021, Plaintiff received a right to sue letter as to the May 2021 charge (ECF No. 30-52, PageID.2285), and filed the instant action within 90 on November 2, 2021 (ECF No. 1, PageID.1-13).

Defendants claim Plaintiff has failed to exhaust her administrative remedies as to her Title VII claims under Counts I and II of her First Amended Complaint ("FCA"). ECF No. 10, PageID.59-63. Plaintiff's Count I, race discrimination, alleges Plaintiff was discriminated against based on being treated differently than similarly situated White employees when excluded from meetings, ridiculed, and overall treated poorly; many of the same concerns raised in Plaintiff's formal written complaint on January 28, 2021. Accordingly, Plaintiff properly exhausted her administrative remedies as to race discrimination before May of 2021, which is what she alleges in Count I of her FCA.

As to Plaintiff's Title VII retaliation claim, Plaintiff is including retaliation which occurred _after_ May of 2021 as part of her Title VII claim. Contrary to Defendants' assertion, Plaintiff was not required to file another EEOC charge in

order to preserve her right to assert subsequent claims of retaliation. Defendants cite the unpublished case of *Lybager v. Gates*, 2012 WL 1095915 at *8 (N.D. Ohio Mar. 30, 2012), in which the plaintiff asserted various claims including discrimination, retaliation, and hostile work environment. The District Court held claims relating to the plaintiff's constructive discharge claim should be dismissed for failure to exhaust administrative remedies, since the resignation occurred almost a year after. Additionally, the court noted that the evidence did not support there was a constructive discharge. *Id.*

Plaintiff's retaliation claims flow from her January 2021 formal internal complaint with GCRC and her May 2021 EEOC charge. Subsequent to her complaints, Plaintiff was subjected to retaliation by Defendants – she was suspended for two weeks and then placed on administrative leave indefinitely. The Sixth Circuit has held retaliation claims are excepted from the EEOC filing and receipt of right to sue letter requirements insofar as they arise <u>after</u> the filing of a charge. *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 254 (6th Cir. 1998); *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 544-45 (6th Cir. 1991). "Retaliation claims often arise after the filing of an initial EEOC charge and allowing the litigant to proceed without a separate right to sue letter 'is properly grounded in the belief that the inability of the parties to solve the original complaint is likely to make future complaints futile.'" *Rennie v. Garrett*, 896 F.2d 1057, 1062 (7th Cir. 1990).

For the reasons set forth above, Plaintiff's Title VII claims should not be dismissed based on failure to exhaust administrative remedies.

### B. Plaintiff's Race Discrimination Claims Should Not be Dismissed.

Plaintiff can establish a *prima facie* case of race discrimination under Title VII and ELCRA. Defendants concede that Plaintiff has demonstrated she (i) is a member of a protected class; and (ii) was qualified for her job at issue. Plaintiff can demonstrate the other two prongs of the *prima facie* test that she was (iii) subjected to an adverse employment action; and (iv) treated differently than similarly situated nonprotected employees. *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802 (1973).  Under Title VII, ELCRA, or Section 1981, an adverse employment action is "a materially adverse change in the terms and conditions of [a plaintiff's] employment." *Spees v. James Marine, Inc.,* 617 F.3d 380, 391 6th 2010) (quoting *White v. Burlington N. & Santa Fe Ry. Co.,* 364 F.3d 789, 795 ((6th Cir. 2004) *(en banc)).*  Courts consider whether an action resulted in Plaintiff receiving "**a less distinguished title**, a material loss of benefits, **significantly diminished material responsibilities**, or **other indices** that might be unique to a particular situation along with marker of prestige and desirability. *Id.*

Here, Plaintiff has suffered adverse actions, she was 1) placed on administrative leave without a plan to return her for two months; 2) removed as the head of the HR division resulting in a loss of prestige; 3) her material responsibilities

have been significantly diminished by transferring the HR department under the leadership of the finance director, her Caucasian colleague; 4) lower annual raise; and 5) her unpaid two-week disciplinary suspension.  Removing Plaintiff as the Division Head of HR is a loss prestige and she no longer controls the vision of the HR department, its decisions, including but not limited to investigations, budget, negotiations, staffing, and advice and recommendations. Plaintiff is two levels lower on the organization chart, but her contract states that she <u>shall</u> report to the managing director. These are material changes in the terms and conditions of her employment, and significantly diminished her responsibilities. Plaintiff was also placed on an administrative leave which in this case is an adverse action because she was only reinstated when she reached an impasse with Defendants. Plaintiff was not notified to return to work until after she filed her lawsuit. Defendants' placed Plaintiff on an administrative leave to investigate her complaint for two months, their legitimate "non-discriminatory" reason, but never investigated her complaint, which is pretext.

As to the final prong of her *prima facie* case, Plaintiff can show that she was treated differently than similarly situated nonprotected employees. As for the lowered annual raise, a review of the **2022** fiscal budget dispositively proves there is a correlation between race and lowered annual raises. Plaintiff and Anthony Branch both African-American directors receive lower raises than their Caucasian counterparts. Defendant Peivandi recommended HR and Finance be combined and

removed duties from the Plaintiff to her co-worker Tracy Kahn. Defendant Peivandi reorganized GCRC to remove responsibilities from the current two African-American Directors, Plaintiff and Anthony Branch to increase the responsibilities of the directors of Finance and Engineering who are both Caucasian. GCRC, through its agent, Defendant Peivandi, treated Plaintiff differently than similarly situated nonprotected employees. Plaintiff was threatened with termination if she continued to investigate a race discrimination claim filed with her in accordance with the GCRC Complaint Procedure (**Ex.11**; **Ex.16**). Defendants admit the decision to remove Plaintiff as investigator was incited by "*Racial events*" ... similarly situated nonprotected Directors, Tracy Khan and Eric Johnston assignments were not removed based on their race, but they were given additional duties that were removed. There is a fact question whether or not Plaintiff was treated differently during employment because of her race based on the above statements and admissions by Defendants. Therefore, summary judgement is not proper.

### C. Defendants are Not Entitled to Summary Judgment on Plaintiff's Retaliation Claims.

Defendants seek dismissal of Plaintiff's retaliation claims pursuant to Title VII, ELCRA, and the PWDCRA. To establish a *prima facie* case of retaliation, Plaintiff must set forth that (1) she engaged in activity protected, (2) the defendant knew of [her] exercise of [her] protected right, (3) the defendant then "took an adverse employment action against the plaintiff or subjected the plaintiff to severe

or pervasive retaliatory harassment", and (4) there was a causal connection between Plaintiff's protected activity and the adverse employment action. *Johnson v. Cleveland City Sch. Dist.*, 344 F. App'x 104, 113 (6th Cir. 2009), *citing Barrett v. Whirlpool Corp.*, 556 F.3d 502, 516 (6th Cir. 2009)); *see also Aho v. Dept. of Corrections*, 263 Mich. App. 281, 288, 688 N.W.2d 104 (Mich. Ct. App. 2004) (setting forth substantially similar factors to establish a *prima facie* case of retaliation pursuant to the PWDCRA). Defendants concede Plaintiff meets the first three prongs of her *prima facie* case. ECF No. 30, PageID.2004. Defendants' motion only disputes whether Plaintiff can establish there was a causal connection between Plaintiff's protected activity and the listed adverse employment actions (suspension, annual raise, accommodation removal, and constructive demotion)[1]. As set forth below, there is a genuine dispute of material facts that Plaintiff was retaliated against for her protected activity and, therefore, summary judgment on her retaliation claims should be denied.

---

[1] Once a plaintiff has presented a *prima face* case of retaliation, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the adverse employment action. *Sniecinski v. Blue Cross & Blue Shield of Michigan,* 469 Mich. 124, 134 (2003). "The articulation requirement means that the defendant has the burden of producing evidence that its employment actions were taken for a legitimate, nondiscriminatory reason." *Hazle v. Ford Motor Co.*, 464 Mich. 456 (2001). Defendants only argue Plaintiff cannot establish causation. Defendants do not present a non-retaliatory reason for the adverse employment actions.

To establish a causal connection, a plaintiff must produce "sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not [engaged in protected activity]." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000), *citing Harrison v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.,* 80 F.3d 1107, 1118 (6th Cir. 1996); see also *Newton v. Ohio Dep't of Rehab. And Corr. – Toledo Corr. Inst.,* 496 Fed.Appx. 558, 567 (6th Cir. 2012). "A causal link may be proved by either direct evidence or through temporal proximity that creates an inference of causation." *Newton,* 496 Fed.Appx. at 567.

Defendants argue Plaintiff cannot establish causation under the "but-for" standard applicable to retaliation claims. The Michigan Court of Appeals has held in a retaliation claim, a plaintiff need not show that the protected activity is the exclusive reason. *Silberstein v. Pro-Golf of Am., Inc*., 278 Mich. App. 446, 750 N.W.2d 615 (2008), *app. denied*, 483 Mich. 886, 759 N.W.2d 882 (2009). To establish the element of causation, a plaintiff must show that his or her participation in protected activity identified in the ELCRA was a "significant factor" in the employer's adverse employment action, not simply that a causal link existed between the two. *Barrett v. Kirtland Community College*, 245 Mich. App. 306, 315; 628 N.W.2d 63 (2001).

There is a genuine dispute of material facts of causation between Plaintiff's complaints and adverse employment actions. After the "investigation" into Plaintiff's race discrimination complaint in 2021, Defendant Peivandi retaliated against Plaintiff because of her complaint, which led to the retaliatory two-week disciplinary suspension. Indeed, Defendant Peivandi testified as follows in that regard:

> Q. Sounds like she did something wrong. What did she do wrong?
> **A. What she did, this complaint again. I mean, she filed a complaint in January, and I give her a directive so we can maybe fix our working relationship, to let her know who the boss is in this organization instead of giving me a pushback with every decision I want to make, and then I put her on suspension, and during that two-week suspension, I see this. And then, I mean, I didn't know how to handle this. So I figured, the best thing to do is put her on administrative leave and turn this over to the Board and let them decide how to handle this case, and that's exactly what happened here.**

**Ex. 6**, Dep. of Def. Peivandi, pp. 130-131.

Defendant Peivandi's testimony establishes there is a fact question on whether Plaintiff's complaints led to him giving her the directives leading to the two-week disciplinary suspension. The directives were a direct result of the Plaintiff's race discrimination complaint and only issued after the 'investigation," failed to substantiate her concerns and instead dismissed Plaintiff's concerns as simply a "turf war"; a conclusion Defendants continue to repeat in an effort to dismiss Plaintiff's claims. Defendant Peivandi's directives include silencing Plaintiff by forbidding her from making a complaint to his superiors (the GCRC Board), which is a violation of GCRC policies. ECF No. 30-30, PageID.2263 (directives); **Ex. 11**, GCRC complaint

policy. Directive number three states "Your *employment contract* states that you, "**shall** work under the direction of" the Managing Director but Plaintiff reports up through 2 other directors. Defendants pick and choose what contracts and policies to follow removing Plaintiff's autonomy as the HR Director.

Based on the above, there is more than enough evidence to show Plaintiff was retaliated against for making her complaints. Accordingly, Defendants' Motion for Summary Judgment of Plaintiff's retaliation claims should be denied.

### D. Defendants are not entitled to Summary Judgment on Plaintiff's Failure to Accommodate Claim under PWDCRA.

In Count VII, Plaintiff has asserted a failure to accommodate claim against Defendants pursuant to the PWDCRA. Defendants eventually accommodated Plaintiff's eye sight disability (blind in one eye, glaucoma in other), by hiring a human resource assistant, part-time, then full-time to *assist* plaintiff with the computer and reading. It was not until after Plaintiff returned from being placed on disciplinary suspension and then indefinite administrative leave in November of 2022, that she no longer had either a part-time or full-time HR administrative assistant. Ms. Pearson was promoted to Benefits Coordinator and not replaced. Within a month of returning and no longer have an HR administrative assistant, Plaintiff advised her new supervisor, Randy Dellaposta, that she needed an HR assistant. **Ex. 8**, Dep. of Dellaposta, pp. 26-27.

"A person with a disability may allege a violation against a person regarding a failure to accommodate under this article only if the person with a disability notifies the person in writing of the need for an accommodation <u>within 182 days after the person with a disability knew or reasonably should have known that an accommodation was needed</u>."). (Emphasis Added). *Petzold v. Borman's Inc.*, 241 Mich. App. 707, 716, 617 N.W.2d 394 (2000); *see* MICH. COMP. LAWS § 37.1210(18) . Plaintiff provided written notice to Defendants within 182 days after knowing that the accommodation was needed.

Defendants next argue that the request for assistance with the computer and reading from an HR administrative assistant is per se unreasonable. Pursuant to MCL 37.1210 Defendants have the burden to prove the accommodation is an undue burden, which Defendants have failed to do in this case. Indeed, the accommodation was made and budgeted for demonstrating its feasibility and reasonableness.

Defendants admit, at least having assistance in HR, was a "reasonable accommodation". Then-GCRC Vice Chair Mandelaris admitted Plaintiff needed to be accommodated, and there was no burden to accommodate Plaintiff with any of her requested accommodations, **Ex. 2**, Dep of Mandelaris, pp. 17-18. The position was budgeted and had been for several years. Defendants wrongly argue Plaintiff was asking to be completely accommodated with reading and computer work. However, Plaintiff's request for accommodation is for assistance with the duties, not

22

that she does not want to perform those duties. (**Ex. 17**, FMLA paperwork showing needs assistance with computer and reader.)

Finally, Defendants argue that, while suggesting the accommodation was not reasonable, argues that the Benefits Coordinator position provides the ongoing accommodation. Contrary to Defendants' representation, the Benefits Coordinator does not provide the needed accommodation for Plaintiff's disability. In fact, Ms. Pearson was not advised that her job duties relating to providing assistance to Plaintiff as an [PWDCRA] accommodation would continue. (**Ex. 7**, Dep. of Pearson, p. 15. Defendants have failed to fill the role of HR administrative assistant since Ms. Pearson left the position. Although Ms. Pearson has tried to help Plaintiff, she cannot assist her at the same level she was. (**Ex. 7**, Dep. of Pearson, pp. 16-17).

Plaintiff's eye sight has not gotten better and, in fact, is getting worse. Yet, Defendants have denied her the accommodation for her disability that she had before her two-week disciplinary action and indefinite administrative leave. Defendants cannot deny that Plaintiff has been denied the accommodation since her return. Accordingly, there is genuine dispute of material fact that Defendants have failed to accommodate Plaintiff pursuant to the PWDCRA.

### E. Plaintiff's Speech regarding Defendant Peivandi's Violations of Health Regulations is Protected Speech.

Plaintiff's two-week disciplinary suspension states that Plaintiff's speech regarding COVID-19 protocols and mask mandates was a reason for the discipline.

ECF No. 30-47, PageID.2272. Plaintiff spoke out regarding her belief Defendant Peivandi violated health regulations. Plaintiff shared with Defendant Peivandi that she believed they had a duty to discuss the serious health matter with the board and that she had learned that the Genesee County issued a mask requirement for all County buildings.

Although Plaintiff sent a memo to employees as part of her job duties, Plaintiff's speech regarding Defendant Peivandi's violation of regulations was not part of her job duties. It is well established that a "government employee does not relinquish all First Amendment rights otherwise enjoyed by citizens just by reason of his or her employment." *City of San Diego v. Roe*, 543 U.S. 77, 80, 125 S. Ct. 521, 160 L.Ed.2d 410 (2004). Public employees are not required to sacrifice the totality of their First Amendment free speech rights in order to obtain or continue their employment. *Rankin v. McPherson*, 483 U.S. 378, 383, 107 S. Ct. 2891, 97 L.Ed.2d 315 (1987)."[W]hen public employees allege that government officials break the law, their speech addresses a matter of public concern." *Kiessel v. Oltersdorf*, 459 F. App'x 510, 514 (6th Cir. 2012) (collecting cases); *see also Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 896 (6th Cir. 2003) ("Defendants' failure to follow state law is a 'concern to the community.'"); *Marohnic v. Walker*, 800 F.2d 613, 616 (6th Cir. 1986) ("Public interest is near its zenith when ensuring that public organizations are being operated in accordance with the law . . .

24

."); *Walker v. Burkes*, No. 2:15-CV-3058, 2017 U.S. Dist. LEXIS 145685, 2017 WL 3962627, at *5 (S.D. Ohio Sept. 8, 2017) (finding a matter of public concern where plaintiff "pleaded that she chiefly spoke out about purported illegal activity within the institution."). *Clay v. Mich. Dep't of Corr.*, No. 2:21-cv-11880, 2022 U.S. Dist. LEXIS 140552, at *11-12 (E.D. Mich. Aug. 8, 2022), attached as **Ex. 18**.

Defendants' sole argument for dismissal of Plaintiff's 1983 claim is the assertion that the speech was part of Plaintiff's official duties. However, the speech regarding Defendant Peivandi's violation of health regulations (not requiring employees to wear mask) is not part of Plaintiff's official duties and is a matter of public concern. Accordingly, Plaintiff's 1983 claim should not be dismissed.

## **CONCLUSION**

WHEREFORE, for the reasons more fully stated above, Plaintiff respectfully requests that this Honorable Court deny Defendants' Motion for Summary Judgment in its entirety.

Respectfully submitted,

Dated: 1/23/2023

Lee Legal Group, PLLC
s/Charis Lee
Charis Lee, Counsel for Plaintiff
117 W. Flint Park Blvd.
Flint, MI, 48505
810-513-9257

s/Julie A. Gafkay
Julie A. Gafkay (P53680)
Co-Counsel for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

On January 23, 2023, the foregoing pleadings, Plaintiff's Response to Defendants' Motion for Summary Judgment with Brief In Opposition Pursuant to FRCP 56 with Exhibits was electronically filed with the Clerk of the Court through the Court's CM/ECF System, which will send notification to such filings to the attorneys of record, Andrew Cascini, Charis Lee.

Dated: <u>1/23/2023</u>

GAFKAY LAW, PLC
<u>s/Julie A. Gafkay</u>
Julie A. Gafkay (P53680)
Co-Counsel for Plaintiff
604-A S. Jefferson Ave.
Saginaw, MI 48607
(989) 652-9240
jgafkay@gafkaylaw.com

26