DONNA POPLAR,

    Plaintiff,   CASE NO: 2:21-cv-12568-VAR-JJCG

v

    HON. VICTORIA A. ROBERTS

GENESEE COUNTY ROAD COMMISSION;
and FRED F. PEIVANDI, in his individual
capacity,

    Defendants.

| | |
|---|---|
| Charis Lee (P84127)<br>LEE LEGAL GROUP, PLLC<br>Attorney for Plaintiff<br>117 W. Flint Park Blvd.<br>Flint, MI 48505<br>(810) 513-9257<br>charis@leebusinesslaw.com | Andrew A. Cascini (P76640)<br>HENN LESPERANCE PLC<br>Attorneys for Defendants<br>32 Market Ave., SW, Suite 400<br>Grand Rapids, MI 49503<br>(616) 940-5164<br>aac@hennlesperance.com |
| Julie A. Gafkay (P53680)<br>GAFKAY LAW, PLC<br>Co-Counsel for Plaintiff<br>604-A S. Jefferson Ave.<br>Saginaw, MI 48607<br>(989) 652-9240<br>jgafkay@gafkaylaw.com | |

**DEFENDANTS' REPLY BRIEF IN SUPPORT
OF THEIR MOTION FOR SUMMARY JUDGMENT UNDER FED. R. CIV. P. 56**

Plaintiff submitted a three-part Response Brief ("Response") to Defendants' Brief in Support of their Rule 56 Motion. (Doc. 31, PageID.2296-2230). Taken together or considered individually, none of the points raised in any section of Plaintiff's Response effectively refute Defendants' entitlement to summary judgment for those reasons described below.

A. <u>Plaintiff's "disputes" with Defendants' Statement of Material Facts are immaterial or involve misstatements of the record.</u>

Plaintiff's Response begins with a point-by-point discussion of each numbered paragraph in Defendants' Statement of Material Facts. (Doc. 31, PageID.2305). Of these 50 paragraphs, Plaintiff concedes to agreement between the parties on 22 of them. And Defendants assert that Plaintiff's "disputes" concerning an additional 24 – namely, Paragraphs 3, 6, 8, 9, 20-25, 29-31, 33-38, 41-44, and 47 – raise wholly immaterial, irrelevant, or trivial distinctions. This leaves only 4 of Defendants' Material Facts allegedly within the realm of material dispute, but Plaintiff misstates the record with respect to each of them.

1. *Paragraph 18 – Alleged Kim Day Race Complaint*

In her Response, Plaintiff states that GCRC employee Kim Day "complained of race discrimination to Daly against Defendant Peivandi." (Doc. 31, PageID.2306). To be sure, Daly testified Day "felt that she was at the 'end of her career'" sometime between 2010-2012, and alleged that "one of the factors that she felt she couldn't get promoted was that she was an African American." (Daly 31-32). But this testimony alone cannot support the implication that Plaintiff wishes to place upon Peivandi; namely, that he had a reputation or history of discriminating against African-Americans within the GCRC for four separate reasons. First,

1

Peivandi became Managing Director in 2018, meaning Day's comments to Daly predated Peivandi's leadership of the GCRC. Second, Daly testified that he had never observed any examples or instances to lead him to believe Peivandi held racial animus against African-Americans. (Daly 32). Third, if Day ever felt her race jeopardized her career at the GCRC, the fact that she maintains a supervisory position over a decade after she raised those concerns must undermine that belief. (*Id.*). Fourth the record reveals that, Day never filed <u>any</u> written complaint or grievance with the GCRC at any time accusing Peivandi of discrimination.

2. *Paragraph 39 – The COVID-19 Masking Memorandum*

Plaintiff's Response denies that the August 17, 2021 COVID-19 Mask Memorandum she wrote "is and contains all 'speech' upon which her First Amendment retaliation claim relies."[1] (Doc. 31, PageID.2308). The denial is refuted by the record, in which Poplar herself <u>twice</u> <u>separately</u> admitted this claim was based upon the memorandum. (Poplar 250, 252).

3. *Paragraphs 48-49 – Benefit Coordinator Monica Pearson's Promotion*

Plaintiff raises two disputes of fact with respect to her former assistant Monica Pearson, who currently serves as the GCRC's Benefit Coordinator. First, she denies that Pearson "had been intentionally cross-trained as a back-up and potential replacement" for Senior Benefit Coordinator Cherry Grant. (Doc. 31, PageID.2310). But this flatly contradicts

---

[1] Plaintiff alleges in the argument section of her Response that her protected speech included her emailed comments to Peivandi recommending a mask mandate preceding the memorandum. Even notwithstanding her contradictory testimony, she also made these recommendations pursuant to her official duties. (**Ex. 42**). They are thus unprotected.

the record, which demonstrates that from the very onset of Pearson's hire into the administrative assistant position, <u>Plaintiff herself</u> was "cross-training" Pearson to fill a Senior Benefit Coordinator position occupied by Cherry Grant because Plaintiff wanted to train Pearson to take over for Grant, whom Plaintiff believed "could retire at any time." (Pearson 12, 32; Dellaposta 24).[2] Second, Plaintiff denies "the Benefit Coordinator job description was modified to require Monica Pearson" to continue accommodating Plaintiff even in Pearson's new role. (Doc. 31, PageID.2310). This denial is unsupported, and contradicts testimony from Peivandi, Pearson, and Deputy Managing Director Dellaposta who all testified that the GCRC informed Pearson she would retain these residual duties post-promotion and modified the applicable job description accordingly. (Peivandi 64; Dellaposta 25; Pearson 38).

    B.    <u>Plaintiff's own Material Facts are either undisputed by Defendants, involve immaterial facts, or misstate the record.</u>

Plaintiff's own numbered Statement of Material Facts is similarly ineffective to defeat summary judgment. As a threshold issue, Paragraphs 51, 52, 57, 62, 64, 69, 71, 74-76 and 83 are either true or uncontested by Defendants by reason of irrelevance. Further, Defendants assert that Paragraphs 54, 55, 58-60, 62, 65, 67, 68, 72, 79-81, and 84-88 raise only trivial distinctions which are immaterial to this lawsuit. But the remainder of Plaintiff's alleged facts warrant refutation, which can be shown with reference to the record:

- Paragraphs 53 and 73 are untrue as explained in Defendants' Brief and Section A.1

---

[2] Plaintiff's plan to cross-train Pearson also undermines the argument that Pearson's promotion was retaliation because Plaintiff herself envisioned it.

3

- above. (Doc 30, PageID.1990-1991).

- Paragraph 56 is untrue because Lange interviewed <u>two</u> African-Americans: Dickerson and Plaintiff. (**Ex. 43** at 4). Lange also tried to interview a third (Branch) but was thwarted by Branch's attorney because Branch was also suing the GCRC at that time. (**Ex. 43** at 3).

- Paragraphs 61 and 63 are untrue because the August 4, 2021 directive from the Genesee Health Department did <u>not</u> require all government buildings to require visitors and employees to wear masks, but instead mandated masks only in certain types of buildings, as Peivandi confirmed with two senior County administrators. (**Ex. 44**; Peivandi 103, 109).

- Paragraph 66 is untrue because the record demonstrates that the Board accepted Poplar's request to meet with her and her attorney to attempt to resolve the complaint, and later ordered Poplar to return to work under modified conditions designed to ease the tension between her and Peivandi. (Doc. 30, PageID.1996-1997).

- Paragraph 70 is misleading because Mandelaris flatly denied that Peivandi or anybody else at the GCRC discriminated against Plaintiff because of her race. (Mandelaris 15-16).

- Paragraph 77 is untrue because (i) the accommodation has not been removed merely because Pearson has changed job positions; and (ii) Peivandi promoted Pearson and took steps to maintain her accommodation functions as described in Section A.3 above.

- Paragraph 78 is materially misleading because it falsely implies that Director-level raises discriminatorily harmed African-American Directors when in fact there is no year-over-year racial disparity in Director-level raises:

| **Director** | **Race** | **2020-2021 (Ex. 45)** | **2021-2022 (Ex. 46)** | **2022-2023 (Ex. 47)** |
|---|---|---|---|---|
| Plaintiff (HR) | African-Am. | 3% | 2% | 3% |
| Anthony Branch (Maintenance) | African-Am. | 4% | 1% | 3% |
| Kendra Love-Brazzell (Fleet) | African-Am. | (not yet Director) | (not yet Director) | 22.7% (Fleet Dir.) |
| Fred Peivandi (MD) | Iranian-Am. | 1% | 1% | 10% |
| Randy Dellaposta (Ops./Deputy MD) | Caucasian | 1% (Ops. Dir.) | 13% (Deputy MD) | 3% (Deputy MD) |
| Eric Johnston (Engineering) | Caucasian | 1% | 4% | 3% |
| Tracy Khan (Finance) | Caucasian | 4% | 10% | 7.8% |

- Paragraph 82 is materially misleading by implying that the GCRC's July 2022

4

reorganization was motivated in whole or in part out of animus toward Plaintiff. The Board unanimously approved this plan. (**Ex. 48**). The plan (in part) merged the Finance and HR Departments, stripped the Deputy Managing Director of direct supervisory responsibilities of the Fleet Maintenance Department, and created a new Fleet Maintenance Director position filled by Love-Brazzel. (Dickerson 75-76; Peivandi 60). Crucially, <u>no GCRC employee's title or pay changed pursuant to the reorganization</u>. (**Ex. 48**).

    C.    <u>Plaintiff's legal arguments are insufficient to withstand summary judgment.</u>

        1.    *Failure to Exhaust Administrative Remedies*

Plaintiff's Response misstates the case law defining when a plaintiff has exhausted administrative remedies with respect to retaliation claims. Defendants agree that Plaintiff has not necessarily failed to exhaust administrative remedies merely because she pled Title VII retaliation allegations in this lawsuit (specifically, her August 19, 2021 suspension and her September 6, 2021 paid administrative leave) which were absent from her May 2021 EEOC Charge. But those alleged instances of retaliation occurred not just after the Charge was filed, but <u>also after the August 5, 2021 issue of the Right-to-Sue Notice associated with that Charge</u>. And both published,[3] unpublished,[4] and published out-of-circuit precedent[5] agree that a plaintiff is "required to file a new charge" before suing under retaliation claims occurring <u>after</u> the issue of a right-to-sue letter. *Schaefer v. U.S. Postal Service,* 254 F.Supp.2d at 752.

---

[3] *Schaefer v. U.S. Postal Service,* 254 F.Supp.2d 741, 752 (S.D. Ohio 2002).
[4] *Lybarger v. Gates,* 2012 WL 1095915, at *8 (N.D. Ohio Mar. 30, 2012); *George v. Youngstown State University,* 2019 WL 118601, at *6 (N.D. Ohio Jan. 7, 2019); *Nolan v. Ohio Dept. of Rehabilitation,* 2021 WL 5603335 (N.D. Ohio Nov. 30, 2021); *Gipson v. Dept. of Rehabilitation,* 2020 WL 1233638 (S.D. Ohio Mar. 13, 2020).
[5] *See, e.g., Clockedile v. New Hampshire Dep't of Corr.,* 245 F.3d 1, 5 (1st Cir. 2001) ("It is a stretch to describe acts that occurred after agency proceedings have ended… as being 'within' the scope of an agency investigation.")

## 2. *Race Discrimination*

In her Response, Plaintiff argues that the record supports the establishment of both the adverse action and causal connection prongs of her prima facie case of race discrimination. As for Plaintiff's claim that her alleged "remov[al] as the head of the HR division resulting in a loss of prestige" and the diminution of her "material responsibilities" qualify as adverse actions, neither of these results of the July 2022 GCRC Reorganization are sufficient because Plaintiff maintained her pay, all material job duties, job title, and direct reports following the reorganization. The only incidental impact upon Poplar's employment was the consolidation of the Finance and HR Departments. (**Ex. 48**).

Plaintiff also can show no causal link between her race and either the reorganization or the alleged "lower raise." As shown above, Director-level raises vary year-to-year, and the record proves no discrepancy between African-American Directors and their peers. And the results of the reorganization cannot be attributable to Poplar's race because they included: (1) removal of duties from Dellaposta (a Caucasian) which were given to Love-Brazzel (an African-American); (2) the maintenance of title and all material responsibilities for Branch (a fellow African-American); and (3) the promotion of Love-Brazzel into a Director-level position.

## 3. *Retaliation*

Plaintiff misstates the law with respect to the appropriate causation standard which must be applied to her ELCRA and PWDCRA retaliation claims. Plaintiff in her Response cites *Silberstein* and *Barrett* for the proposition that "significant factor" causation will carry the

6

day to prove retaliation under Michigan law, but these cases are out of date.[6] Instead, Plaintiff's retaliation claims "will therefore fail if [Defendants] took the alleged adverse actions based on factors untainted by retaliatory animus, even if [their] decision was also based on factors that were tainted by retaliation." *Seoane-Vasquez v. Ohio State University,* 577 Fed. Appx. 418, 428-429 (6th Cir. 2014). Defendants maintain prior arguments that Plaintiff cannot prove the adverse acts occurred solely because of purportedly retaliatory intent.

### 4. *Failure to Accommodate Plaintiff's Disability*

Defendants remain entitled to summary judgment over Plaintiff's failure to accommodate claim. First, Plaintiff cannot avoid meeting the PWDCRA's written notice requirement only through one conclusory statement without any citation in the record. (Doc. 31, PageID.2326). More substantively, Defendants rely on those arguments addressing this issue in their initial Brief and in Section A.3 above.

Dated: February 6, 2023
/s/ Andrew A. Cascini
Andrew A. Cascini
HENN LESPERANCE PLC
32 Market Ave SW, Ste. 400
Grand Rapids, Michigan 49503
aac@hennlesperance.com

---

[6] *See Rouch World LLC v. Dept. of Civil Rights,* 2022 WL 3007805, at *10 (Mich Sup. Ct. July 28, 2022) (holding in part that the "operative phrase 'because of' in the ELCRA establishes a but-for causation standard"); *Hecht v. National Heritage Academies, Inc.,* 499 Mich. 586 (2016) (same); *Williams v. Serra Chevrolet Automotive LLC,* 4 F.Supp.3d 865, 879 (E.D. Mich. 2014) (specifically predicting ELCRA retaliation's but-for causation standard based on statutory text); *Beard v. AAA of Michigan,* 593 Fed.Appx. 447 (6th Cir. 2014) (same).

## **CERTIFICATE OF SERVICE**

On February 6, 2023, the foregoing pleadings, Defendants Reply Brief in Support of their Motion for Summary Judgment with Exhibits, was electronically filed with the Clerk of the Court through the Court's CM/ECF System, which will send notification of such filings to the attorneys of record.


Dated: February 6, 2023            */s/ Andrew A. Cascini*
                                                    Andrew A. Cascini
                                                    HENN LESPERANCE PLC
                                                    32 Market Ave SW, Ste. 400
                                                    Grand Rapids, Michigan 49503
                                                    aac@hennlesperance.com