UNITED STATES DISTRICT
COURT EASTERN DISTRICT OF
MICHIGAN SOUTHERN DIVISION

DONNA POPLAR,

     Plaintiff,

v.

GENESEE COUNTY ROAD
COMMISSION; and FRED F.
PEIVANDI, in his individual
capacity,

     Defendant.

Case No. 21-12568
Honorable Victoria A. Roberts

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### I.   INTRODUCTION

Donna Poplar brings this eight-count discrimination and retaliation suit against defendants Genesee County Road Commission ("GCRC" or the "Commission") and Fred F. Peivandi.

Counts I, II, and V allege race-based discrimination in violation of Title VII of the Civil Rights Act of 1964, Michigan's Elliott-Larson Civil Rights Act ("ELCRA"), and 42 U.S.C. §1981, respectively.

Counts III, IV, V, and VIII allege retaliation in violation of Title VII, the ECLRA, §1981, and Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA"), respectively.

1

Count VII alleges free speech retaliation under 42 U.S.C. §1983 and Count VIII alleges failure to accommodate in violation of the PWDCRA.

Defendants move for summary judgment on all Counts. GCRC says Poplar fails to exhaust administrative remedies for her Title VII claims and fails to establish essential elements of her remaining claims. The Court held a hearing on March 21, 2023.

Because Poplar cannot establish a *prima facie* case for her race-based discrimination claims, the Court **GRANTS** summary judgment on Counts I, II, and V. Poplar also cannot establish a *prima facie* case for free speech retaliation under §1983; the Court **GRANTS** summary judgment on Count VI.

The Court **DENIES** summary judgment on Poplar's remaining retaliation claims in Counts III, IV, V, and VII. Her failure to accommodate claim under the PWDCRA , Count VII, also survives.

## II.   **BACKGROUND**

In October 2016, Donna Poplar became the Director of Human Resources and Administrative Services at the GCRC. Fred Peivandi served as her direct supervisor from 2016 until 2021. Throughout her employment, Poplar voiced numerous complaints against Peivandi to the GCRC's Board

of Commissioners (the "Board") and the Equal Employment Opportunity Commission ("EEOC").

Poplar's issues with Peivandi began in 2018 with her accommodation request. Poplar has a FMLA approved visual disability and says Peivandi refused to grant her accommodation request because he could just "hire an HR Director who did not need an accommodation." Peivandi's refusal led Poplar to file an EEOC charge, alleging disability discrimination, and race discrimination. In 2019, she received a right-to-sue letter.

Poplar says it took Peivandi one year and the filing of an EEOC charge before he granted her accommodation request. Despite receiving a right-to-sue letter, Poplar did not sue; she hoped working conditions would improve. They did not. Poplar continued to have a negative working relationship with Peivandi.

The relationship reached a flashpoint in late 2020 when Poplar gave deposition testimony in a lawsuit filed by former Maintenance Director Anthony Branch against the Commission. Poplar says she was subject to Peivandi's repeated insults, verbal abuse, harassment, intimidation, discrimination, and poor treatment because she testified. On January 28, 2021, she reported Peivandi to the Board and requested an investigation. She also filed a second complaint with the EEOC on May 10, 2021.

3

Before the EEOC investigation concluded, the Board investigated Poplar's complaint. It concluded that the problem was neither discrimination nor retaliation, but a turf war and power struggle between Poplar and Peivandi. To remedy the situation, Peivandi emailed Poplar a list of directives to follow to improve their relationship. They did not work.

Peivandi and Poplar's bitter relationship reached a head during the COVID-19 pandemic. On August 4, 2021, Genesee County and MIOSHA issued a directive suggesting mask mandates in public spaces like the Commission. Poplar told Peivandi about the directive, but he did not want to mandate masks. On August 17, 2021, Poplar sent a COVID-19 memo explaining that Peivandi refused to issue a mask mandate and advised employees that Genesee County was a high transmission area.

Soon after, Peivandi placed Poplar on an unpaid two-week suspension for insubordination relating to the memo. In a written notice, Peivandi stated that one of the reasons for the suspension was because Poplar undermined his decision not to mandate masks by sending the memo.

While suspended, Poplar submitted another complaint to the Board. In the second complaint she criticized the basis for her suspension. Immediately following the two-week suspension, Peivandi put Poplar on paid

4

administrative leave. Poplar says the administrative leave was retaliation for the second complaint.

Poplar received another right-to-sue letter on her May 10, 2021 EEOC charge and she filed this lawsuit against defendants. The same day, Peivandi reinstated Poplar but removed her as HR Director. Poplar says this, too, was retaliatory.

Poplar continues to work at the GCRC and says she is still subject to retaliation. For example, while on administrative leave, Poplar's assistant Monica Pearson, who served as her full-time reasonable accommodation, received a promotion to Benefits Coordinator. Poplar says Peivandi and the GCRC refuse to replace Pearson in retaliation for this lawsuit, leaving Poplar without the accommodation she needs and to which she is entitled.

## III.  **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 56(a), "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

The movant bears the initial burden to inform the Court of the basis for the motion and must identify portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies her burden, the nonmoving party must set forth specific facts showing a genuine issue of material fact. *Id*. at 324. The nonmoving party must also respond with a sufficient showing that establishes the essential elements of the case. Fed.R. Civ.P 56(c), 28 U.S.C.A. If the nonmoving party fails to establish the elements or show a genuine dispute of material fact, summary judgment is appropriate.

A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Unsupported, conclusory statements are insufficient to establish a factual dispute to defeat summary judgment, as is the mere existence of a scintilla of evidence in support of the nonmovant's position; the evidence must be such that a reasonable jury could find in its favor. *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009); *Anderson,* 477 U.S. 242, 252.

In deciding a summary judgment motion, the Court "views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The Court only needs to consider the cited materials, but it may consider other evidence in the record. Fed. R. Civ. P. 56(c)(3). The Court's function

6

at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249.

## IV. <u>LAW AND ANALYSIS</u>

The GCRC claims it is entitled to summary judgment because Poplar: (1) fails to exhaust administrative remedies for her race and retaliation claims under Title VII; (2) cannot establish a *prima facie* case for any of her race and retaliation claims; (3) cannot show pretext even if she could establish a *prima facie* case for either claim; (4) cannot show the Commission failed to reasonably accommodate her under the PWDCRA; and (5) cannot show that Fred Peivandi retaliated against her for engaging in protected speech under the First Amendment.

### A. <u>Exhaustion Of Administrative Remedies In The Title VII Claims</u>

GCRC argues that Poplar did not exhaust her administrative remedies for her Title VII race discrimination or retaliation claims that relate to events occurring after August 5, 2021. It suggests that the EEOC did not investigate any claims arising after that date. Thus, the Commission says Poplar needs a new right-to-sue letter to bring the claims.

Poplar concedes that her retaliation claim relies on events occurring after August 5, 2021. However, she argues that she does not need to file a

new EEOC charge because the retaliation occurring after August 5, 2021 flowed from the May 2021 EEOC charge. Poplar also says her Title VII discrimination claim is based on events she outlined to the Board in her January 28, 2021 formal complaint, long before August 5, 2021. The Court agrees.

Exhaustion of administrative remedies is a prerequisite to filing a Title VII claim. *See Brown v. General Serv. Admin*., 425 U.S. 820 (1976). However, the exhaustion requirement "is not meant to be overly rigid, nor should it result in the restriction of subsequent complaints based on procedural technicalities." *Randolph v. Ohio Dep't of Youth Servs*., 453 F.3d 724, 732 (6th Cir. 2006).

### i.  Title VII Discrimination Claim (Count I)

This claim relies on events occurring before August 5, 2021.

In the May 2021 EEOC filing, Poplar says Peivandi discriminated against her by treating her poorly, ridiculing her, speaking poorly of her, and holding her to a different standard than her white peers. In her complaint and response brief she alleges this same discriminatory treatment as the basis for her Title VII discrimination claim. She does not suggest any new discrimination or cite to events occurring after August 5, 2021.

8

Even if she did, Poplar's 2021 filing noted ongoing discrimination. A new EEOC filing would be unnecessary. *See Randolph*, 453 F.3d at 732. (for discrimination claims, the EEOC complaint should be "liberally construed to encompass all claims reasonably expected to grow out of the charge of discrimination.")

### ii.  Title VII Retaliation Claim (Count III)

Retaliatory acts occurring after an EEOC filing can be reviewed for the first time in the district court if the retaliation claim is reasonably related to the claims that the plaintiff asserted before the agency. *Delisle v. Brimfield Twp. Police Dep't*, 94 F. App'x 247, 252–254 (6th Cir. 2004). Poplar's Title VII retaliation claim is reasonably related to the claims she asserts in her May 2021 EEOC filing.

In the May 2021 EEOC charge, Poplar says Peivandi retaliated against her because she gave deposition testimony in Branch's lawsuit and filed the 2019 EEOC charge. Her filing suggests a pattern at the GCRC: when Poplar engages in protected activity, Peivandi responds with retaliation. According to Poplar, the events occurring after August 5 are more examples of the same conduct.

The Court finds that requiring Poplar to file a new EEOC charge stating another occurrence of the same pattern she alleges started in 2019 would

be overly rigid, futile, and fail to comport with the purpose of the exhaustion requirement. *Id. See also Randolph*, 453 F.3d at 732.

## B. Establishing A Prima Facie Case For Race-Based Discrimination (Counts I, II, and V)

Poplar brings her discrimination claims under Title VII, the ELCRA, and §1981.

In this Circuit, claims under these statutes are analyzed under the framework developed for claims filed under Title VII. *See Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 720 (6th Cir. 2004) (stating that the elements of a *prima facie* case as well as the allocations of the burden of proof are the same for employment claims stemming from Title VII and § 1981); *Crane v. Mary Free Bed Rehab. Hosp.*, 634 F. App'x 518, 521 (6th Cir. 2015)("[c]laims under [the ELCRA and §1981] are analyzed under the framework developed for claims brought under Title VII".)

To establish a *prima facie* case for race-based discrimination under Title VII, the ELCRA, or §1981, Poplar must show that she was: (1) a member of a protected class; (2) subject to an adverse employment action; (3) qualified for the position; and (4) treated differently than similarly situated non-protected employees. *Tennial v. United Parcel Serv.*, Inc., 840 F.3d 292, 303 (6th Cir. 2016).

10

There is no debate that Poplar establishes the first three elements. However, the GCRC argues that Poplar cannot establish the fourth prong: that she was treated differently than similarly situated non-protected employees.

To be deemed similarly situated, the individuals with whom the plaintiff seeks to compare her treatment must have: (1) dealt with the same supervisor; (2) been subject to the same standards; and; (3) engaged in the same or similar conduct but treated more favorably. *Mitchell v. Toledo Hosp.*, 964 F.2d, 577, 583 (6th Cir. 1992).

Poplar compares herself to two non-protected employees, Tracy Khan and Eric Johnston. She establishes that Khan and Johnston work under Peivandi's management and suggests they were subject to the same standards as she. But Poplar fails to show that they engaged in the same or similar conduct and were treated more favorably.

Poplar basis her discrimination claims on an array of conduct. She says sending the COVID-19 memo, giving deposition testimony, filing complaints with the Board and EEOC, were all examples of conduct she engaged in and for which she faced discrimination. She does not produce any evidence or even allege that Khan or Johnston engaged in the same conduct, or that they were treated more favorably for doing so. Instead, Poplar asserts that they

are similarly situated because they have similar jobs and responsibilities. That is not enough; the Court needs to compare Kahn and Johnston's *conduct* with Poplar's.

Because Poplar cannot identify similarly situated non-protected employees who engaged in the same conduct as she, but were treated more favorably, all her discrimination claims fail.

The Commission also argues that its conduct was motivated by legitimate non-discriminatory reasons and Poplar cannot show pretext. Poplar refutes the GCRC's claims. However, the Court need not address these arguments because Poplar fails to establish a *prima facie* case for discrimination. *See Findley v. United Parcel Serv*., 433 F. App'x 391, 393 (6th Cir. 2011) (stating that the court's analysis ends when the plaintiff fails to establish a *prima facie* case for discrimination); *Bush v. ProMedica Toledo Hosp., Inc*., No. 21-3444, 2022 WL 221639 (6th Cir. Jan. 26, 2022) (same).

## C. Establishing Prima Facie Case for Retaliation (Counts II, IV, V,VIII)

Poplar brings her retaliation claims under Title VII, the ELCRA, §1981, and the PWDCRA. Like her discrimination claims, retaliation claims under these statutes are analyzed under the framework developed for Title VII claims. *Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 343–44 (6th

Cir. 2021); *Boxill v. O'Grady*, 935 F.3d 510 (6th Cir. 2019); *Robinson v. MGM Grand Detroit, LLC*, 821 F. App'x 522, 531 (6th Cir. 2020).

To establish a *prima facie* case for retaliation using the Title VII framework, Poplar must show: (1) she engaged in protected activity, (2) GCRC was aware of the protected activity, (3) GCRC took an action that was materially adverse to her, and (4) there is a causal connection between the plaintiff's protected activity and the defendant's adverse action. *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 523 (6th Cir.2008). GCRC concedes the first three prongs. At issue is what causation standard Poplar must meet to establish a causal connection and if she sufficiently meets that standard.

### i. Applicable Causation Standard

Poplar says she is only required to show that her participation in protected activity was a "significant factor" in GCRC taking adverse actions against her. The Commission says Poplar must prove that "but-for" her participation in the protected activity, the adverse actions would not have occurred. Case law supports the Commission's position.

The Supreme Court makes clear that a but-for causation standard applies for claims under Title VII and §1981. *See Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013); *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 206 L.Ed. 2d 356, 140 S. Ct. 1009 (2020).

Regarding the ELCRA, Michigan courts have used the significant factor standard in the past. However, it recently clarified that language in the ELCRA creates a but-for causation standard. *See Rouch World, LLC v. Dep't of C.R.*, 510 Mich. 398 (2022); *Sumner v. Beaumont Health Sys.*, No. 20-13163, 2022 WL 1322850, at *16 (E.D. Mich. May 3, 2022).

Finally, Michigan courts often analyze PWDCRA retaliation claims with ADA claims and use the but-for causation standard. *Bachman v. Swan Harbour Ass'n*, 252 Mich. App. 400, 653 N.W.2d 415 (2002). As these cases illustrate, Poplar must show but-for her participation in protected activity, GCRC would not have taken adverse actions against her.

### ii. Whether Poplar Establishes But-For Causation

Poplar establishes the fourth prong of her *prima facie* case for retaliation.

To establish a causal connection, a plaintiff must proffer evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action." *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir.2007) (quotation marks omitted). "Although temporal proximity itself is insufficient to find a causal connection, a temporal connection coupled with other indicia of retaliatory conduct may be sufficient to support a finding of a causal connection." *Randolph*, 453 F.3d 737.

14

Poplar alleges four adverse employment actions as the basis for her retaliation claims. Peivandi: (1) removed her as head of the HR division; (2) gave her a lower annual raise; (3) imposed an unpaid two-week disciplinary suspension, and (4) removed her accommodation.

At this point, the Court does not consider GCRC's proffered reasons for taking the actions. The Court only looks to determine if Poplar establishes a causal connection between the adverse actions and her protected activity. Poplar relies on temporal proximity and other indicia of retaliation to prove a causal connection.

### 1)   Temporal Proximity

Poplar says her removal as HR head, loss of her accommodation, lower raise, and suspension occurred after she testified in the Branch lawsuit and complained to the Board and EEOC about Peivandi. GCRC says some of these actions occurred months after she engaged in the protected activity which would not support a temporal connection.

Temporal connections should be close in time to support a *prima facie* case of retaliation. *Mickey v. Zeidler Tool & Die Co.,* 516 F.3d 516, 525 (6th Cir.2008); However, this Circuit found months long gaps between the protected activity and adverse action can be close enough in time to support a temporal connection. *See Bryson v. Regis Corp.,* 498 F.3d 561, 571 (6th

Cir.2007) (holding a temporal connection after a three-month gap) *Clark v. Walgreen Co.,* 424 Fed.Appx. 467, 473 (6th Cir.2011) (holding that a two-month gap established a temporal connection.)

The adverse actions alleged here are at least close enough in time to suggest a causal connection. Poplar lost her accommodation and title as HR director soon after she complained to the Board and filed this lawsuit. Her lower raise also came after she submitted complaints to the EEOC and the Board—although the temporal gap is wider. Finally, while her suspension occurred after not following directives, it did occur within months of Poplar filing the EEOC charge.

2)   Other Indicia Of Retaliation

Poplar relies on Peivandi's deposition transcripts that suggest he suspended and placed Poplar on leave because she filed complaints with the Board and the EEOC, and he did not know how to handle the situation. She says that her lower raise is retaliatory and points to Branch, another black employee who filed an EEOC discrimination charge and received a lower raise.

Poplar also says no other directors saw their titles and responsibilities diminished. Lastly, regarding her accommodation, she states that she had

the assistant for years at the Commission, and only when she filed the lawsuit did the Commission promote Pearson.

Making all reasonable inferences in favor of Poplar and viewing the evidence presented in the light most favorable to her, Poplar meets the fourth and final prong of a *prima facie* case for retaliation. *See Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir.2000). ("The burden of establishing a prima facie case in a retaliation action is not onerous, but one easily met.")

### D. Burden Shifting For Retaliation Claims

The *McDonnell Douglas* burden-shifting framework governs retaliation claims based on circumstantial evidence. *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 523 (6th Cir.2008). "[Once a plaintiff] establishes a *prima facie* case of retaliation, the burden shifts to the defendant to establish a legitimate, non-retaliatory reason for the adverse employment action." *Penny v. United Parcel Serv.*, 128 F.3d 408, 417 (6th Cir.1997). The plaintiff then bears the burden to prove that the defendant's proffered reason for the adverse action was mere pretext for retaliation.

"A plaintiff will usually demonstrate pretext by showing that the employer's stated reason for the adverse employment action either (1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action." *Id.* at 393. However, the plaintiff may also

17

demonstrate pretext by offering evidence which challenges the reasonableness of the employer's decision 'to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation.'" *White*, 533 F.3d at 393.

Because the adverse actions at issue in Poplar's retaliation claims are largely the same as the actions raised in her discrimination claims, the Court incorporates both parties' discrimination burden shifting analyses into their retaliation analyses.

GCRC concedes that the two-week suspension, lower annual raise, and the removal of accommodations qualify as adverse actions and offers non-retaliatory reasons. It does not dispute or concede that Poplar's removal as head of HR qualifies as an adverse action but offers a non-retaliatory reason. The Court analyzes GCRC's proffered non-retaliatory reasons.

### i.  Legitimate Reasons and Pretext

GCRC has the burden to proffer legitimate reasons for its adverse actions. To survive summary judgment, Poplar must rebut by showing pretext. She does.

1) Suspension

18

Poplar says she was suspended because she disagreed with Peivandi. GCRC says Peivandi suspended Poplar because she went against his directives, but Poplar says the directives were retaliatory.

Poplar suggests that the directives only aimed to silence her from making more complaints. Poplar says directives changed who she reports to, removed her autonomy, and restricted her ability to talk to the Board.

Poplar also relies on Peivandi's deposition testimony to show pretext. Peivandi testified that Poplar was wrong to complain. He also testified that he gave Poplar directives to "*maybe* fix [the] working relationship" and to "let her know who the boss is."

She rebuts the Commission's legitimate reason.

2) Removal as HR Head

The same is true regarding Poplar's removal as HR head. The Commission says it did so because it consolidated the HR and Finance departments. Poplar suggests that was pretext. She says no other directors saw their duties and title diminished in a restructuring.

3) Lower Raise

Next, the Commission concedes that Poplar got a lower raise but says it was not in retaliation. It claims directors' raises fluctuate and there is no significant disparity between Poplar's raise and that of other directors—

especially looking at the raises over a three-year period. At the hearing, Poplar says the lower raise was retaliation and motivated by her filing EEOC claims and complaints with the Board. She also claims that Branch, another black director, received a lower raise when he engaged in protected activity.

The Court finds that Poplar sufficiently rebuts GCRC.

### 4) Loss of Accommodation

Finally, and as discussed in greater detail in the following section, GCRC argues that it did not remove Poplar's accommodation in retaliation. Instead, it says her accommodation request is unreasonable; it did not have notice of her request; or it already provides accommodation. Poplar says she gave notice, provides evidence that she is not being accommodated, and that her request was reasonable. She successfully rebuts GCRC's proffered legitimate reasoning.

Poplar's retaliation claims can move forward based on the four adverse actions she asserts.

### E. Failure To Accommodate Count (VII)

Poplar brings a failure to accommodate claim under the PWDCRA. She says Monica Pearson was her full-time HR assistant and served as her reasonable accommodation for her visual disability. Poplar claims that once

the GCRC promoted Pearson to Benefits Coordinator, it refused to hire a new HR assistant, leaving her without the accommodation she is entitled to.

GCRC says it is entitled to summary judgment because Poplar (1) failed to give written notice; (2) requests an accommodation that is *per se* unreasonable; and (3) is already being reasonably accommodated.

The Court finds these claims are sufficient to withstand summary judgment.

### i. Notice

GCRC says Poplar failed to submit a written notice requesting an accommodation within 182 days of when she knew or reasonably should have known that she needed an accommodation.

The PWDCRA mandates an employee alleging a violation under the Act notify the person in writing of the need for accommodation within 182 days after the person with the disability knows of the need. Mich. Comp. Laws Ann. § 37.1210 (18) (West). It is the plaintiffs' burden to show this. However, a defendant invoking the notice provision under subsection 18 "*must first* post notices or use other appropriate means to provide all employees and job applicants with notice of the requirements of subsection (18)". MCL 37.1210(19). It is not clear that GCRC did this.

Since neither party presents evidence of compliance with the standard set out in MCL 37.1210 (18) and (19), the Court finds summary judgment on these grounds would be inappropriate.

GCRC next argues that Poplar knew she needed an accommodation years before she brought this lawsuit. It points to deposition testimony where Poplar states that she knew she needed an accommodation around the time she was hired. At the hearing, Poplar suggests that her accommodation needs significantly changed over time. She suggests that the progressive nature of her disability means that the accommodation she referenced when hired is not the accommodation she needs now. This is an issue of fact best left for the jury.

### ii. Unreasonable Accommodation

GCRC also argues that providing Poplar with a full-time assistant to help with reading and computer work is unreasonable.

It is the disabled employee's burden to propose an accommodation and show that the accommodation is objectively reasonable. *Cassidy v. Detroit Edison Co*., 138 F.3d 629, 634 (6th Cir.1998). If the disabled employee satisfies this initial burden, "the employer bears the burden of proving that the accommodation is unreasonable and imposes an 'undue

hardship' on the employer." *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 781 (6th Cir.1998).

Poplar satisfies her burden. She says an assistant to help with reading and computer work is reasonable. She also points to the Commission's past fulfillment of her accommodation request as support of its reasonableness. To rebut, GCRC says reading and computer screen work are essential functions of the job. And since Poplar cannot perform these essential functions without an assistant, the accommodation is *per se* unreasonable.

Accommodations that eliminate an essential job function are indeed *per se* unreasonable. *Brickers v. Cleveland Bd. of Educ.*,145 F.3d 846, 850 (6th Cir.1998). However, Poplar argues that she requests assistance, not complete elimination of reading and computer work from her job. Additionally, GCRC does not show that providing an assistant to help with reading and computer work will impose "undue hardship." A reasonable jury could conclude the opposite, given the Commission provided the accommodation before without issue.

### iii.  Current Accommodation

GCRC says that even though Pearson was promoted to Benefits Coordinator, she still provides support and accommodation to Poplar. GCRC says that supporting Poplar is part of Pearson's duties as Benefits

Coordinator and that Pearson's new role was modified to include assisting Poplar. It points to deposition testimony to support this assertion.

Yet, Poplar says that when Pearson became the Benefits Coordinator she stopped providing the needed accommodation. To support her claim, Poplar points to Pearson's deposition testimony where Pearson claims she cannot provide the same level of support to Poplar, and GCRC does not expect that she continue serving as Poplar's accommodation. [ECF No. 31-8, PageID.2492].

Because there are genuine factual issues, summary judgment is improper on this ground.

### F. Free Speech Retaliation (Count VI)

To succeed on a First Amendment retaliation claim Poplar must show: (1) she engaged in constitutionally protected conduct; (2) an adverse action was taken against her that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by her protected conduct.'" *Paterek v. Vill. of Armada*, Michigan, 801 F.3d 630, 645 (6th Cir.2015) (quoting *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 723 (6th Cir.2010)).

For a public employee's speech to be a "constitutionally protected activity" under the first prong of First Amendment retaliation, she must show

that (1) she spoke as a private citizen, not a public employee; (2) her speech addressed a matter of public concern; and (3) her interest as a citizen in speaking on the matter outweighed the state's interest, as an employer, in promoting the efficiency of the public services it performs. *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 540 (6th Cir. 2012). When a public employee makes a statement pursuant to her official duties, the employee is not speaking as a citizen for First Amendment purposes. *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).

During the hearing, Poplar conceded that the COVID-19 memo was not protected activity because she spoke as an employee pursuant to her official duties and not as a private citizen. Instead, she argued that her August 16, 2021 email to Peivandi was the protected speech.

In that email, Poplar tells Peivandi that mask mandates are required under local and state regulations. She says that she disagrees with his decision not to issue a mandate but would send a memo on COVID-19 in accordance with his wishes.

This speech cannot be constitutionally protected activity because the statements in the email were made in Poplar's official capacity.

According to her job description, Poplar's official duties include overseeing legal compliance, employee relations and communications, and

25

ensuring the Commission complies with all laws related to employment. She also maintains the Commission's relationships with local and state regulatory agencies. It was Poplar's duty as HR Director to ensure GCRC's compliance with MIOSHA and county health regulations. The Peivandi email and COVID-19 memo were squarely among her responsibilities.

Indeed, as Poplar states in the email, it was "[her] duty to discuss the MIOSHA recommendations and the CDC Guidelines concerning this serious matter."

Because she cannot identify any constitutionally protected activity, Poplar's §1983 retaliation claim fails.

## V.   CONCLUSION

The Court **GRANTS** summary judgment and **DISMISSES** Poplar's race-based discrimination claims (Count I, Count II, Count V in part) and her §1983 free speech retaliation claim (Count VI).

The Court **DENIES** summary judgment on Poplar's failure to accommodate claim and the remaining retaliation claims. The following will proceed to trial:

1. Count III retaliation under Title VII;

2. Count IV retaliation under the ELCRA;

3. Count V retaliation under §1981;

4.  Count VII failure to accommodate under the PWDCRA; and

5.  Count VIII retaliation under the PWDCRA.

s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  4/20/2023